**LINDY BROS. BUILDERS, INC. OF PHILA., et al., Plaintiffs,**

v.

**AMERICAN RADIATOR & STANDARD SANITARY CORPORATION et al., Defendants.**

**Civ. A. No. 41774 SC.**

United States District Court,
E. D. Pennsylvania.

April 28, 1972.

Harold E. Kohn and Aaron M. Fine, Philadelphia, Pa., for Class Representatives.

Harold E. Kohn, Patrick T. Ryan and Edward W. Mullinix, Philadelphia, Pa., Thomas W. Mack, Washington, D. C., and Elwood S. Kendrick, Los Angeles, Cal., for Builder-Owner Settlement Committee.

John Edward Burke and Ross, Hardies, O'Keefe, Babcock & Parsons, Chicago, Ill., John A. Cochrane and Cochrane & Bresnahan, P.A., St. Paul, Minn., Howard M. Downs and Howard, Prim, Smith, Rice & Downs, San Francisco, Cal., C. Carleton Frederici and Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, Iowa, Paul R. Connolly and Williams, Connolly & Califano, Sidney

Harris and Arent, Fox, Kintner, Plotkin & Kahn, Washington, D. C., Mark I. Harrison and Harrison, Myers & Singer, Phoenix, Ariz., Mitchell A. Kramer, Philadelphia, Pa., Jerrold E. Salzman and Freeman, Freeman & Salzman, Chicago, Ill., Paul D. Scanlon and Burkhardt, Arnavas & Bartl, Alexandria, Va., and Frederick D. Steinhardt and Travis, Warren, Nayer & Burgoyne, Detroit, Mich., for fee petitioners.

Josef D. Cooper and Friedman, Koven, Shapiro, Salzman, Koenigsberg, Specks & Homer, Chicago, Ill., Allen Horstman and Wooden, Stark, McLaughlin & Sterner, Indianapolis, Ind., Michael I. Miller and Isham, Lincoln & Beale, Chicago, Ill., for various settling plaintiffs.

William Simon and Howrey, Simon, Baker & Murchison, Washington, D. C., for claimants Humble Oil and Refining Co. and Friendswood Development Co.

William E. Willis and Sullivan & Cromwell, New York City, for full-line defendants.

Edward W. Mullinix and Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for short-line defendants.

HARVEY, District Judge:

Presently before the Court in this multidistrict antitrust litigation are various applications seeking substantial allowances of attorneys' fees and expenses. These applications have been filed in connection with the Court's consideration of the final approval of a settlement of the claims of members of a national class of builder-owners against the defendants herein who are manufacturers of plumbing fixtures.[1] Inasmuch as this litigation has included claimants at various different levels of the chain of distribution of plumbing fixtures, separate settlements have been negotiated between the settling defendants involved and separate classes of claimants. The settlement presently before the Court, compromising the claims of a nation-wide class of builder-owners, involves the largest amount and the largest number of claimants in this litigation. The result has been that the number of and the amount of the fee applications filed are far greater and the issues involved have been much more hotly contested than those in any of the other settlements.

The plumbing fixture antitrust litigation includes the largest number of cases ever transferred to a single district by the Judicial Panel for Multidistrict Litigation for consolidated pre-trial proceedings under 28 U.S.C. § 1407. At last count, some 370 cases have been either commenced in this District or transferred here by the Panel. The nature and history of this massive litigation has previously been fully discussed in opinions of this Court and of the Panel. These opinions are listed in Philadelphia Housing Authority v. American Radiator and Standard Sanitary Corporation, 323 F.Supp. 364 (E.D.Pa. 1970), at page 365, footnote 1.[2]

Insofar as the matters presently before the Court are concerned, no more than brief mention of the other settlements is necessary. At a hearing held on December 7, 1970 in connection with Settlement Order No. 1, this Court approved a settlement for a national class of wholesalers in the amount of $1,000,-000. Applications for fees and expenses were likewise considered, and various allowances were approved.[3]

---

1. As explained in previous opinions of this Court, there are two groups of defendants, the "full-line defendants" and the "short-line defendants." One of the full-line defendants, Briggs Manufacturing Company, is not a party to any of the settlements in this litigation.

2. Later opinions of this Court, of the Panel and of the Third Circuit are reported at 322 F.Supp. 834 (E.D.Pa.1971), 323 F. Supp. 381 (E.D.Pa.1970), 332 F.Supp.

1047 (Jud.Pan.Mul.Lit.1971), 438 F.2d 1187 (3rd Cir. 1971), 453 F.2d 30 (3rd Cir. 1971).

3. A fee for counsel for the Class Representatives was approved in the amount of 15% of the net settlement fund. As compared with some of the other settlements in this litigation, the wholesalers' settlement presented fewer complications, and less time was spent by the attorneys than in the others.

Although the wholesalers' settlement had been unopposed, a proposed $2,000,000 settlement for a nation-wide class of plumbing and other contractors was vigorously opposed by a small number of plaintiffs. In Settlement Order No. 2, this Court gave preliminary approval to that proposed settlement. Certain plaintiffs thereupon filed a motion to vacate that Order. Following a hearing, such motion was denied for the reasons set forth in this Court's opinion in Philadelphia Housing Authority v. American Radiator and Standard Sanitary Corporation, 323 F.Supp. 364 (E.D.Pa.1970). Subsequently, another hearing was held to consider final approval of the contractors' settlement and various applications for the allowance of attorneys' fees and expenses to be paid from that fund. Again, there was opposition to the settlement. For the reasons stated in Philadelphia Housing Authority v. American Radiator and Standard Sanitary Corporation, 322 F.Supp. 834 (E.D. Pa.1971), this Court gave final approval to the contractors' settlement, awarded certain attorneys' fees and expenses and denied certain other applications for fees.[4]

An appeal was thereupon taken by certain plaintiffs from this Court's Order giving final approval to the contractors' settlement and also from this Court's refusal to grant a fee to one of the petitioning attorneys. In Ace Heating and Plumbing Company v. Crane Company, 453 F.2d 30 (3rd Cir.1971), the Third Circuit affirmed the Court's Order approving the settlement but modified the fee allowances to include an additional $3000 fee to be paid to attorney Lawrence Walner, for his services in connection with the creation of the settlement fund.

Following approval of the contractors' settlement, various public bodies' settlements were next presented to the Court. Unlike the other settlements in this litigation, the public body cases were not settled under a single agreement between plaintiffs and defendants. The full-line defendants had offered to pay $1,750,000 to settle all public body claims, and the short-line defendants had contributed various sums to the settlement funds thereby created. Final approval has now been given to most of these settlements which were separately presented to the Court, and various requested attorneys' fees and expenses have been allowed.

On May 17, 1971, a hearing was held to consider preliminary approval for the proposed builder-owner settlement. This settlement fund consisted of $21,500,000 from the full-line settling defendants and $1,400,000 from the short-line settling defendants, or an original total of $22,900,000 plus interest. However, the parties had agreed that interest would accrue from April 1, 1970 on the portion of the fund paid by the full-line defendants and from September 1, 1970 on the portion of the fund paid by the short-line defendants. It is estimated that as of May 31, 1972, the aggregate amount of the settlement fund will be some $25,955,000.

On May 28, 1971, this Court entered Settlement Order No. 21 which gave preliminary approval to the proposed builder-owner settlement and appointed the plaintiffs in Civil No. 41,774 as the Class Representatives. A Committee of attorneys was also appointed by the Court to carry out the provisions of this Order.[5] Thereafter, the plaintiffs in Arntz Bros. v. American Radiator and Standard Sanitary Corporation, Civil No. 70–276, rep-

---

4. Attorneys' fees in the amount of 25% of the net settlement fund were allowed in connection with the approval of the contractors' settlement. This amount was divided into 14 equal shares with 3 shares being paid to counsel for the Class Representative and the remainder being divided among 16 plaintiffs' attorneys who had contributed to the creation of the settlement fund.

5. The Settlement Committee was composed of Messrs. Kohn, Kendrick, and Mack, representing the plaintiffs, and Messrs. Ryan and Mullinix, representing the defendants.

resented by Howard M. Downs, filed a motion to vacate Settlement Order No. 21. Subsequently, Mr. Downs accepted the settlement on behalf of the plaintiffs that he represented and withdrew his motion.

On April 7, 1972, a hearing was held to consider whether the builder-owner settlement should be finally approved, and whether applications for attorneys' fees and expenses should be granted. The only opposition to final approval was that of Mr. Downs who, although he had previously accepted the settlement on behalf of his clients and had even filed an application for the allowance of a fee and expenses, repeated certain objections that he had made earlier and withdrawn. After hearing argument, the Court overruled these objections and indicated that it would give final approval to the settlement as submitted. Findings of fact, conclusions of law and other necessary orders will be hereafter entered approving this settlement.

At the April 7, 1972 hearing, the Court next heard arguments in support of and in opposition to the various applications for attorneys' fees and expenses that had been filed. It is the sharp conflicts resulting from the substantial fees and expenses claimed which the Court is now called upon to resolve.

Applications for the allowance of fees and expenses from the settlement fund are of three different types:

(1) A petition filed by the Settlement Committee seeking reimbursement of its expenses in administering the settlement in the amount of $223,119.23.

(2) A petition filed by Harold E. Kohn and David Berger jointly, as attorneys for the Class Representatives, for the award of counsel fees and expenses. From the settlement fund, they seek reimbursement of their expenses amounting to $42,380 and attorneys' fees aggregating some $3,036,825. (The fees have been computed on the basis of figures supplied to the Court as of April 18, 1972).

(3) Eleven petitions filed by attorneys who claim to have contributed to the creation of the settlement fund and who seek fees and expenses to be paid from such fund.[6] Each of these attorneys represents plaintiffs who have filed suits in this litigation and who will therefore receive distributions from the fund in varying amounts. The attorneys involved and the amounts of the fees plus expenses claimed are as follows:

| | | | |
|---|---|---|---|
| 1. | John Edward Burke | $100,000.00 plus | $ 8,619.00 |
| 2. | John A. Cochrane and Floyd E. Boline, jointly | 116,000.00 plus | 5,997.17 |
| 3. | Paul R. Connolly | A reasonable fee plus | 28,194.46 |
| 4. | Howard M. Downs | 97,500.00 plus | 23,537.29 |
| 5. | C. Carleton Frederici | 17,646.50 plus | 4,971.94 |
| 6. | Sidney Harris | 37,275.00 to 55,912.00 plus | 18,550.94 |
| 7. | Mark I. Harrison | 6,745.60 plus | 3,916.32 |
| 8. | Mitchell A. Kramer | 7,537.50 plus | 824.20 |
| 9. | Paul D. Scanlon | 627,600.00 plus | 23,265.57 |
| 10. | Frederick D. Steinhardt | 25,600.00 plus | 2,742.06 |
| 11. | Lawrence Walner | 30,500.00 plus | 1,110.00 |

6. Twelve separate petitions were submitted in all. One was filed jointly by two different attorneys. Another, filed by Jerrold E. Saltzman, was unopposed. It merely sought (and received) approval by the Court of the amount of a contingent fee to be charged and paid from certain distributions, pursuant to an agreement between such attorney and his clients.

Opposition to the award of any attorneys' fees to be paid from the settlement fund to any petitioning attorneys has been filed by two claimants, namely, Humble Oil and Refining Company and Friendswood Development Company. These claimants did not file suit against the defendants but have duly filed claims which will permit them to share in the distribution of the settlement fund. They object to the allowance of any fees to petitioners Kohn and Berger or to any of the other petitioning attorneys, claiming that all the plaintiffs' attorneys involved will be adequately compensated under their private fee agreements with their clients. Petitioners Kohn and Berger object to any allowances to the 12 attorneys listed hereinabove, and a number of the latter, as well as other counsel for litigating claimants, object to the charging of any portion of the Kohn and Berger fee against that part of the fund to be distributed to their clients.

Among the detailed provisions of Rule 23 of the Federal Rules of Civil Procedure, there are none which specifically deal with the awarding by the Court of attorneys' fees and expenses in connection with the approval of a class action settlement. Rule 23(e) does no more than require the approval by the Court of the compromise or settlement of a class action. Authority for fixing attorneys' fees claimed by those responsible for the creation of a settlement fund arises under the general equitable powers of the Court. Where the efforts of a claimant and his attorneys have produced a fund to be divided among all members of a particular class, it has been recognized first, that the claimant as the representative of the class is authorized to contract for all and to incur proper expenses of litigation, and secondly, that the property produced by the efforts of such plaintiff and his attorney should bear the burden of the expense of the attorney's

services so that each member of the class who benefits will contribute his due proportion. Trustees v. Greenough, 105 U.S. 527, 26 L.Ed. 1157 (1882); Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); Mills v. Electric Auto-Lite Company, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); Kahan v. Rosenstiel, 424 F.2d 161 (3rd Cir. 1970), cert. den. 398 U.S. 950, 90 S. Ct. 1870, 26 L.Ed.2d 290 (1970); Philadelphia Electric Company v. Anaconda American Brass Company, 47 F.R.D. 557 (E.D.Pa.1969); Paris v. Metropolitan Life Ins. Co., 94 F.Supp. 792 (S.D.N.Y. 1947); 3B Moore's Federal Practice, ¶ 23.91.

Counsel for the Class Representatives and also each plaintiff's attorney seeking an award from the settlement fund was required by the Court to file a petition detailing the grounds for the requested allowance. After a preliminary review of the petitions filed, the Court addressed a letter dated March 14, 1972 to each petitioning attorney, requiring the furnishing of further pertinent details to the Court in instances in which the original petition had been incomplete.[7] In particular, each applicant was required to state the amount and a break-down of any expenses claimed, the time expended, the details concerning private fee arrangements between the applicant and his clients, the total number of units represented by the applicant in the settlement,[8] the fee expected by the applicant as a result of the allowance of his client's claims, a list of the civil cases in this litigation in which the applicant was counsel of record including the date and place where suit was filed, whether there existed agreements between the applicant and any other attorney as to the sharing of any part of the fee claimed, whether the applicant had received or expected to receive a fee for representing claimants in any settlement in this litigation other

---

7. All but one of the petitioners filed a supplementary petition furnishing the information requested.

8. Claims were classified by the Settlement Committee in terms of the number of

units purchased by the claimant within the applicable time period. Plumbing fixtures for one whole bathroom were counted as one unit.

than the builder-owner settlement, and if so, whether there was any overlapping in the hours expended in connection with the other settlements.

██ Claimants Friendswood and Humble Oil urge that the Court permit discovery and thereafter conduct an evidentiary hearing before deciding any of the questions presently before it. This Court concludes that no such further hearing is necessary. The detailed original and supplementary petitions that have been filed together with attached affidavits and exhibits, when considered in the light of the arguments and this Court's knowledge of these proceedings, constitute a sufficient record for determination of the issues here. No affidavits have been filed in opposition to those submitted by the petitioning attorneys. In assessing the value of an attorney's services, a court is itself an expert on the question and may make its judgment as to the amount to be awarded from its own knowledge and experience of reasonable fees and from the facts before it without the aid of the testimony of witnesses as to value. Powell v. Pennsylvania Railroad Company, 267 F.2d 241, 245 (3rd Cir. 1959), quoting from 7 C.J.S. Attorney and Client § 191d, p. 1093. After hearing argument from counsel at the all-day hearing held on April 7, 1972, this Court is satisfied from its knowledge of the nature and history of this litigation and from its review of the pleadings, affidavits, briefs and exhibits that the questions presently before it can be decided without the necessity of an evidentiary hearing.

I

*The Application of the Settlement Committee for Expenses*

██ In connection with its administration of the settlement, the Settlement Committee incurred substantial expenses for printing, advertising and distributing the class notices, for processing the more than 10,000 claims which were filed, and for other necessary duties. Included in the amount claimed are expenditures for computer and data processing services necessary in administering the settlement. A total of $223,119.23 is sought.

The only objection to any part of this claim was made by Mr. Downs, attorney for plaintiffs in Arntz Bros. v. American Radiator and Standard Sanitary Corporation, *supra.* He objected to the membership of two attorneys for the defendants on the Settlement Committee and to the payment of certain fees to such attorneys representing time they spent in assisting in the administration of the settlement.

Attorneys for the defendants likewise were members of the Settlement Committee appointed to administer the contractors' settlement, and the allowance of fees to them was also attacked in the appeal from that settlement. Such objection was overruled by the Third Circuit in Ace Heating and Plumbing Company v. Crane Company, *supra.* In affirming this Court's previous Order, the Third Circuit noted that "to guarantee fairness in these situations provision for participation of defense counsel on settlement committees should be made part of the negotiated settlements and be specifically included in the notice to class members." 453 F.2d at 34. However, *Ace Heating and Plumbing Company* was decided on November 18, 1971. By that date, the notice to the class members in this settlement had already been sent out in a form similar to that in the contractors' settlement. Inclusion of defense counsel on the Settlement Committee was specifically provided for in Settlement Order No. 21 as proposed, and no objection was made to such provision at the hearing held on May 17, 1971 by Mr. Downs or by any other plaintiff.

Representatives of the defendants were included on this Settlement Committee because of their detailed knowledge of the litigation and settlement, and it was expected that time could be saved if their knowledge were used to assist in administering the settlement. In any event, amounts paid to the attorneys in question were minor compared to the to-

tal expenses of the Settlement Committee and were calculated solely on a time basis and at a designated hourly rate. The objection to the allowance of this portion of the Settlement Committee's application is accordingly denied, and the $223,119.23 claimed is allowed in its entirety, to be deducted from the settlement fund before any other payments or allocations are made.

## II

### The Applications of all Petitioning Attorneys for Expenses

Not only the attorneys for the Class Representatives but also the other petitioning attorneys seek reimbursement on behalf of the plaintiffs they represent of their out-of-pocket expenses incurred in connection with the filing and prosecution of suits in which petitioners were counsel of record. Similar expenses were allowed as deductions from the settlement funds in the wholesalers' and contractors' settlements. As this Court said in approving the award of expenses in connection with the contractors' settlement, "claimants who are not litigants should be required to pay their fair share of the out-of-pocket expenses of those claimants who have actually filed suit and who thereby brought about the creation of the settlement fund." 322 F. Supp. at 839.

■■ Indeed, if those plaintiffs who are now seeking reimbursement of their litigating expenses had not been willing to undertake the risk of incurring these substantial expenses, the non-litigating claimants might not today be recovering the sums to be distributed to them. The equitable rule against saddling the active representatives of a class with the entire expenses of legal efforts of benefit to

all should not be applied in a narrow or technical manner. Thomas v. Honeybrook Mines, Inc., 428 F.2d 981, 985 (3rd Cir. 1970). Equitable considerations therefore dictate that those expenses actually incurred in suits brought by builder-owners should be shared *pro rata* by all claimants who will be receiving distributions from the fund. In accordance with the procedure followed in connection with the contractors' settlement, both the expenses of the Settlement Committee and the out-of-pocket litigation expenses herein allowed should first be deducted from the total amount of the settlement fund before the fee computations hereinafter required are made. However, not all the expenses claimed by the various petitioning attorneys are properly related to creation of this particular settlement fund. Accordingly, the following out-of-pocket litigation expenses are hereby allowed:[9]

| | |
|---|---|
| Harold E. Kohn | $42,380.00 |
| John Edward Burke | 8,619.00 |
| John A. Cochrane jointly with Floyd E. Boline | 5,997.17 |
| Paul R. Connolly | 28,194.46 |
| Howard M. Downs | 23,537.29 |
| C. Carleton Frederici | 4,971.94 |
| Sidney Harris | 18,550.94 |
| Mark I. Harrison | 3,916.32 |
| Mitchell A. Kramer | 824.20 |
| Paul D. Scanlon | 2,265.57[10] |
| Frederick D. Steinhardt | 2,742.06 |
| Lawrence Walner | 1,110.00 |

## III

### Application of Petitioners Kohn and Berger for Attorneys' Fees

For the purpose of computing the attorneys' fees which they claim, petitioners Kohn and Berger have divided

9. Some of the attorneys listed were counsel of record in only one suit, others in more than one. One of the attorneys had filed nine actions against the defendants and another ten.

10. Petitioner Scanlon also requested that additional expenses in the amount of $21,000 be awarded as costs incurred by

his clients Vincent A. Mangano and Edward S. Petros. But these plaintiffs were homeowners or owners of commercial and apartment buildings. Their suits were dismissed, and such dismissals were affirmed by the Third Circuit. See 438 F.2d 1187–1188. Accordingly, these sums have been disallowed as expenses in this settlement.

the settlement fund into four separate categories as follows:

1. The claims of those litigants represented by petitioners Kohn and Berger, totaling 492,754.6 units;

2. The claims of those litigants represented by attorneys whose efforts these petitioners contend contributed to the creation of the settlement fund, totaling 1,017,061.2 units;

3. The claims of those litigants represented by counsel whose efforts petitioners contend did not contribute to the creation of the settlement fund, totaling 470,989.2 units; and

4. All other claims, being those of claimants who would receive distributions from the fund but who either did not file suit, or were not included as settling parties, totaling 723,502.6 units.

Petitioners Kohn and Berger seek no fees from that portion of the fund to be distributed to claimants in Categories 1 and 2. Insofar as Category 1 is concerned, these petitioners will receive fees amounting to some $802,707 under private agreements they have entered into with these claimants. Most of these agreements provide for 'the payment of contingent fees amounting to 33⅓% of the recovery. A few provide that this Court will fix the amount of the contingent fee to be charged, and as to certain other claimants, the fees will be fixed by a bankruptcy court. Insofar as Category 2 is concerned, the attorneys representing the claimants involved will also be compensated under contingent fee agreements with their clients.

Petitioners Kohn and Berger seek a fee amounting to 16⅔% of the amounts to be distributed to claimants in Category 3 and, in addition, a fee in the amount of 33⅓% of the amounts to be distributed to claimants in Category 4. If a figure of $9.50 per unit is used,[11] the fees sought by petitioners Kohn and Berger will amount to $745,733 un-

der Category 3 and $2,291,092 under Category 4, or a total of $3,036,825. Counsel for many of the claimants included in Category 3 object strenuously to the allowance to Messrs. Kohn and Berger of any fee which would be assessed against the distributions to their clients. These attorneys likewise have contingent fee arrangements with their clients on whose behalf they have filed suit, and they point out that if an additional 16⅔% is to be deducted from the amounts to be distributed, these plaintiffs will be paying fees substantially larger than any of the other categories of claimants.

### (a) The Claim Under Category 3

Petitioners Kohn and Berger quite properly have recognized that their own clients should not be charged herein with any fee in addition to the contingent fee which was agreed upon when they were engaged to prosecute the claims in question. This Court concludes that the same principle should apply to all of those claimants who are settling parties and who filed suit through counsel in this litigation. Such claimants will be paying contingent fees ranging from 20% to 33⅓% (or in a few cases even more) to their own attorneys, and any award to petitioners under Category 3 will result in even further reductions in their net recoveries. Unless the Court were to undertake to fix the contingent fees to be charged by every attorney for every claimant participating in the fund, it should not undertake to allocate to counsel for the Class Representatives any portion of the amounts to be paid under these private agreements by Category 3 claimants to their attorneys.

It would clearly be inequitable if claimants who have actually filed suit and who have contracted to pay their attorneys a contingent fee were required to pay an additional 16⅔% to petitioners Kohn and Berger. The result would be to

11. The total number of units in the settlement amount to 2,704,307.6. If the expenses allowed herein are deducted from the settlement fund of $25,955,000, the amount of the distribution per unit will be approximately $9.50 before the deduction of any fees.

exact a total fee of from 36% to 50% or more from the amounts to be distributed to these claimants. When the claimants in Category 3 are considered in relation to all the other claimants, they would be unduly and unnecessarily penalized because they undertook through attorneys of their choice to sue the defendant manufacturers. Considerations of equity permit no such result.

Indeed, petitioners Kohn and Berger recognize that it would be unfair to charge any additional fee against the claimants in Category 2, which, like Categories 1 and 3, consists of claimants who have filed suit through attorneys of their own choice. It is urged, however, that counsel for the claimants in Category 3 did not contribute to the creation of the settlement fund and in some instances even jeopardized the settlement. The facts do not support this contention. There is no doubt that petitioners Kohn and Berger were principally responsible for the settlement that was finally consummated. Nor is there any doubt, as more fully discussed hereinafter, that they should be adequately compensated for their services. But the record before the Court indicates that no settlement would have been possible without the cooperation and efforts of numerous attorneys for plaintiffs who likewise filed suit. The fact that an extremely large number of suits were filed against the defendants in many different districts necessarily helped bring about the agreement which produced the substantial settlement fund which will now be distributed to all claimants. Certainly, those claimants who undertook to incur the risk of litigation should not be penalized by being required to pay far larger attorneys' fees than any other claimant merely because their attorneys may not have, in the opinion of counsel for the Class Representatives, contributed as much to the creation of the settlement fund as did others. Moreover, petitioners Kohn and Berger would be receiving excessive fees were this Court to award them compensation under both Category 3 and Category 4.

This Court is satisfied that there should be no charge by the attorneys for the Class Representatives against any of the sums to be distributed to those claimants included in Category 3. The attorneys' fees to be paid by such litigants will be those that they agreed to pay when they engaged their attorneys. A similar approach was taken in connection with the approval of fees in the contractors' settlement. See 322 F.Supp. at 839.

#### (b) The Claim Under Category 4

■ With reference to the claimants in Category 4, petitioners Kohn and Berger seek a fee amounting to 33⅓% of the amounts to be distributed to these non-litigants. Claimants Humble Oil and Friendswood, which are included in that Category, object to the allowance of any fees to the attorneys for the Class Representatives from this portion of the settlement fund. These claimants argue that petitioners Kohn and Berger will be adequately compensated by their private contingent fee arrangements with their clients and that no additional fee whatsoever should be charged against the non-litigating claimants.

Equitable considerations do not support such an argument. Under the theory advanced by the two objecting claimants, those who did not file suit but who reaped the benefit of the litigation would receive 100% of their claim, while those who undertook the burden of the litigation would have their distributions reduced by amounts ranging from 20% to 40%. The result would be to give a free ride to those who expended the least effort. It is contended that if petitioners Kohn and Berger are paid by their own clients and likewise are awarded a fee from the amount distributable to the non-litigating claimants, they will receive a "double fee." But such is not the case. Petitioners Kohn and Berger will be receiving a part of their aggregate fee from that portion of the settlement fund distributed to their clients, pursuant to contingent fee agreements with such parties. They should receive another part of their fee as awarded by

this Court, to be charged against a different portion of the fund, namely what will be distributed to the non-litigating claimants. The efforts of petitioners Kohn and Berger produced both portions of the settlement fund, and the non-litigating claimants, in accepting their share of the benefits produced, should likewise assume a share of the burden.

On behalf of claimants Humble Oil and Friendswood, it is further argued that since the application has been filed by the attorneys themselves rather than by the parties, they may not be considered by this Court under the equitable principles first espoused in Trustees v. Greenough, *supra*. It is urged that since the assessment of an attorney's fee against the portion of the settlement fund to be distributed to non-litigating claimants will not reduce the fees to be paid by the litigating claimants themselves, such application should be denied *in toto*. The law in this District is clearly otherwise. As Judge Fullam said in Philadelphia Electric Company v. Anaconda American Brass Company, 47 F.R.D. 557 (E.D.Pa. 1969): "And in antitrust litigation, the allocation of the recovery as between claimant and counsel should favor counsel somewhat more than in other fields, as an incentive to more alert enforcement. Cf. Dolgow v. Anderson, 43 F.R.D. 472 (E.D. N.Y.1968) and cases there cited." In the *Anaconda* case, the applicants were likewise Messrs. Kohn and Berger, who had petitioned for and were awarded fees to be paid directly to them as attorneys for the Class Representatives. In this litigation, similar awards have been made directly to petitioning attorneys in the wholesalers' and contractors' settlements. In Ace Heating and Plumbing Company v. Crane Company, the Third Circuit directed this Court to award an additional fee directly to a petitioning attorney who had contributed to the creation of the contractors' settlement. 453 F.2d at 35. See also Central Railroad & Banking Co.

of Georgia v. Pettus, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885). This Court concludes that a reasonable attorneys' fee should be charged against the portion of the fund distributable to the non-litigating claimants and should be paid directly to the attorneys for the Class Representatives.

That petitioners Kohn and Berger are entitled to substantial fees is not disputed by any of the attorneys who sued on behalf of builder-owner plaintiffs in this litigation. Almost five and a half years ago, on December 21, 1966, petitioners Kohn and Berger filed suit on behalf of the Class Representatives, pleading a national class action on behalf of builder-owners. It was soon apparent that the litigation would be a major one and that a very large number of actions would be filed in many different districts across the country on behalf of plaintiffs at various different levels of the chain of distribution in the industry. It was likewise apparent that the claims of certain groups of plaintiffs might well defeat those of others in view of the so-called "pass-on" issue. See Mangano v. American Radiator and Standard Sanitary Corporation, 50 F.R.D. 13 (E.D.Pa. 1970), affirmed 438 F.2d 1187 (3rd Cir. 1971), and Philadelphia Housing Authority v. American Radiator Standard Sanitary Corporation, 323 F.Supp. 381 (E.D.Pa.1970). Petitioners sought early to commence settlement negotiations with the defendants for a so-called "global settlement" which would dispose of all claims against the settling defendants.

Settlement discussions started early in 1967 in Philadelphia and in New York, but were postponed pending the resolution of various issues raised by the defendants. In March, 1967, defendants filed a motion seeking to stay all civil proceedings until the criminal case against them in the Western District of Pennsylvania had been concluded. On May 16, 1967, Judge Lord heard argument on such motion, which was opposed by petitioners. The motion was denied on June 7, 1967. Philadelphia Housing

Authority v. American Radiator and Standard Sanitary Corporation, 269 F. Supp. 540 (E.D.Pa.1967).

Defendants then applied to Judge Rosenberg, before whom the criminal cases were pending in the Western District of Pennsylvania, seeking an injunction prohibiting further proceedings in the civil cases in Philadelphia until the criminal case was concluded. On July 28, 1967, Judge Rosenberg enjoined the plaintiffs in the civil actions from proceeding with discovery in their treble damage suits. United States v. American Radiator and Standard Sanitary Corp., 272 F.Supp. 691 (W.D.Pa.1967). Petitioners and others promptly appealed to the Third Circuit, which reversed the decision of Judge Rosenberg. United States v. American Radiator and Standard Sanitary Corp., 388 F.2d 201 (3rd Cir. 1967), cert. den. 390 U.S. 922 (1968).

After taking an active role in this phase of the litigation, petitioners, with all stays vacated, pushed ahead with discovery proceedings in 1968 and 1969. A motion was filed for the production of magnetic tape recordings of conversations between William E. Kramer of the Plumbing Fixture Manufacturers Association and various members and associates of that organization. In Philadelphia Housing Authority v. American Radiator and Standard Sanitary Corporation, 291 F.Supp. 247 (E.D. Pa.1968), Judge Lord held that such tapes were subject to production, reserving decision as to some of the tapes with respect to which the defendants claimed an attorney-client privilege. Subsequently, Judge Lord ordered the production of those tapes as well. 294 F.Supp. 1148 (E.D.Pa.1969). Petitioners likewise appeared before the Judicial Panel on Multidistrict Litigation and successfully urged that all the plumbing fixture cases be transferred to the Eastern District of Pennsylvania under 28 U.S.C. § 1407. In re Plumbing Fixture Cases, 295 F.Supp. 33 (J.P.M.L. 1968).

After participating in various other discovery proceedings, petitioners undertook to resume settlement negotiations, culminating in a meeting at the Engineers Club in New York City on October 13, 1969. At that time, a large group of plaintiffs' attorneys met with various defendants' attorneys, and an offer of $15,000,000 was made on behalf of the full-line defendants to settle all of the many suits that had been filed. Because of the divergent views expressed at that meeting by the many plaintiffs' attorneys present, nothing definite resulted from these initial discussions. However, it was generally agreed by all plaintiffs that the amount proposed would not be acceptable as a total settlement of the entire litigation.

Petitioners then undertook to keep settlement negotiations alive. Another meeting was held on October 16, 1969 in which separate groups of plaintiffs were formed, consisting of builder-owners, public bodies, contractors, wholesalers and homeowners. A meeting was next held in Mr. Kohn's office on October 29, 1969, attended by various attorneys for builder-owner plaintiffs and by counsel for three principal defendants. As the wholesalers, contractors and public body groups had indicated that they wanted to negotiate separately, petitioners discussed with defense counsel the possible settlement of the builder-owner claims only for an amount in excess of $20,000,-000. Further discussions and negotiations eventually led to the $21,500,000 settlement offer made by the major defendants other than Briggs Manufacturing Company. When various plaintiffs' attorneys could not agree on either this amount or upon the terms of a formal settlement agreement, petitioners Kohn and Berger continued their discussions with defendants' counsel, leading eventually to the execution of an agreement dated February 4, 1970 between petitioners Kohn and Berger and the settling defendants. Under this agreement, the obligations of the defendants were made contingent upon satisfactory resolution

of the claims of wholesalers, contractors, public bodies and the purchasers of structures. Subsequently, many other builder-owner plaintiffs agreed to the terms of this settlement.

At a later date, negotiations were conducted by petitioners with attorneys for the short-line defendants. On August 5, 1970, and November 12, 1970, agreements providing for a settlement fund in the amount of $1,400,000 were executed between petitioners Kohn and Berger and the seven short-line defendants.[12] Following settlements of the claims of the various other classes, these two agreements were formally presented to the Court for preliminary approval at the May 17, 1971 hearing.

The difficult question presented on this record is what this Court should determine to be a reasonable amount to be awarded petitioners under all the circumstances here. On the one hand, the attorneys for the Class Representatives are entitled to fair and adequate compensation for their skillful efforts in producing this sizable fund for the benefit of this large class of builder-owner claimants. On the other hand, this Court should avoid any temptation to be overly generous and should not rubber-stamp a fee application before it, no matter what may be the reputation of petitioning counsel or the degree of expertise claimed. Indeed, the applications for fees filed by the experienced plaintiffs' attorneys herein, including that of counsel for the Class Representatives, can hardly be characterized as modest and are quite obviously colored by considerations of self-interest. Only the Court is in a position to assess impartially the myriad of factors which relate to the question of the reasonableness of a fee to be paid from a class action settlement fund. An excessive allowance of attorneys fees would reflect adversely on both the bar and the bench in the administration of class action settlements. See Milwaukee Towne Corp. v. Loew's, Inc., 190 F.2d 561, 570 (7th Cir. 1951). In exercising its equitable powers, the Court, in particular must bear in mind the interests of the absent non-litigating claimants, who are usually not represented at hearings such as the one recently held in this case.[13]

If all the factors here are weighed, it appears that petitioners have overvalued their services in making the claim advanced under Category 4. This Court concludes that it would not be reasonable to award petitioners a fee in the amount of $33\frac{1}{3}\%$ of the portion of the fund in question. In so deciding, the Court has been guided by the following considerations:

1. In no case that has been brought to the attention of this Court have class action fees been awarded in the amount of $33\frac{1}{3}\%$ of a settlement fund or of any substantial portion of such fund. On the contrary, in comparable situations, class action fees awarded by the Court have not exceeded 25% and in many instances have been less than that figure. In Anaconda American Brass Company, *supra*, the 25% fee awarded by Judge Fullam applied to only a small part of the $22,000,000 settlement fund. Most of the claimants had private agreements with counsel, and the amount actually awarded to the attorneys for the Class Representatives was some $500,000. In State of Illinois v. Harper and Rowe Publishers, Inc., Civil No. 67–C–1899 in the Northern District of Illinois, Judge Decker has awarded attorneys' fees which amount to less than 20% of the total settlement funds. In the wholesalers' settlement in this litigation, a fee of 15% of the net settlement fund was allowed. In the contractors' settlement, a fee of 25% of the net settlement fund was allowed. However, sixteen different attorneys had contributed to the creation of the con-

---

12. Six of the seven short-line defendants were parties to the August 5, 1970 agreement, and the seventh short-line defendant joined in the settlement by virtue of the November 12, 1970 agreement.

13. Humble Oil and Friendswood were the only claimants in this group represented by counsel at the hearing.

tractors' settlement fund, and the fee allowed was divided among them. Counsel for the Class Representatives received merely a portion, some $86,000, of the $400,000 aggregate fees awarded. In the appeal taken from the approval of the contractors' settlement, the Third Circuit, although approving the allowance of counsel fees in the amount of 25%, expressed "some concern in view of the fact that the case never went to trial." 453 F.2d at 34.

■ 2. Where fees are computed on the basis of a percentage of the amount of the recovery, the larger the recovery the less should be the percentage. This principle of a sliding scale has been generally recognized in fee schedules established by statute or rule and is equally applicable where a fund has been created for the benefit of many claimants. Winkelman v. General Motors Corp., 48 F.Supp. 504, 506 (S.D.N.Y.1942); Hornstein, Legal Therapeutics: The Salvage Factor in Counsel Fee Awards, 69 Harv. L.Rev. 658, 664 (1956).

■ 3. Petitioners Kohn and Berger will be receiving $802,707 directly from their clients for their efforts in this litigation. It has not been suggested by any one in this case that this Court should undertake to alter in any way the private agreements which will result in the payment of these contingent fees. However, in fixing the amount of a reasonable fee to be paid petitioners from the settlement fund, the Court necessarily should consider the total amount of the compensation that they will receive for their efforts.

■ 4. Although the time spent by the petitioners is not as important here as it might be in other cases where fees are fixed by the Court, the number of hours expended by counsel is still a factor which should be considered by the Court in awarding fees for class representation. Petitioners Kohn and Berger have spent in excess of 6,000 hours in connection with this litigation. If this Court were to approve their application as filed, including amounts they would receive directly from their clients

under Category 1, they would be compensated at a rate in excess of $630 per hour. Under Category 4 alone, and assuming that all 6,000 hours were spent in earning that portion of their fee, they are seeking, at a 33⅓% figure, compensation at a rate in excess of $500. In spite of the excellent result achieved and the undisputed competence of counsel for the Class Representatives, any award under the circumstances of this case which would result in compensation at such an hourly rate would be excessive.

Balancing all of the factors here present, this Court finds and concludes that a reasonable fee to be awarded to petitioners Kohn and Berger would be 20% of the amount distributable to claimants under Category 4. At $9.50 per unit, the award made by this Court from the settlement fund will amount to $1,-374,655. Petitioners will, of course, be receiving directly from their clients the additional amounts previously noted. Were the percentage figure to be applied to the entire settlement fund, it would undoubtedly be considerably less than 20%. However, under Category 4, 723,-502.6 units are involved or an aggregate distribution of $6,873,275, which is some 26% of the total fund.

In deciding upon an award at a 20% figure, this Court would note that many of the factors relied upon by Judge Fullam in *Anaconda American Brass Company, supra,* are likewise present here. As reasons supporting the award in that case, Judge Fullam cited the following: (1) that the abilities and standing of petitioning counsel were very high; (2) that the results achieved were remarkably favorable to the interests of the class members; (3) that the enforcement of the antitrust laws in that case was solely due to the efforts of the petitioners; (4) that the treble damage feature of antitrust recoveries means that counsel can be generously paid without actual cost to the claimants in that counsel fees merely reduce a windfall; and (5) that the 25% fee had already been agreed to by virtually all the claimants. 47 F.R.D. at 559.

Petitioners Kohn and Berger were likewise petitioners in that case, and this Court would agree that the abilities and standing of these attorneys are very high. The results here have been quite favorable to the interests of the class members who will receive approximately $9.50 per unit under the settlement, before fees are deducted. The fees to be paid from the distributions to non-litigating claimants do no more than reduce amounts that can properly be characterized as windfalls in that they are being received with little effort having been expended by the distributees. The percentage allowed is less than amounts which litigating claimants have agreed to pay their own attorneys. Even though the hourly rate at a 20% figure will be considerably more than a Court might be expected to approve in another type of case, the prospect of handsome compensation must be held out as an inducement to encourage competent counsel to bring civil actions such as those here involved for the enforcement of the antitrust laws. See Dolgow v. Anderson, *supra*, 43 F.R.D. at 494; Hornstein, *supra*, at 662–663. Petitioners Kohn and Berger with their extensive experience in litigation of this nature, provided the leadership which resulted in cooperation on the part of most of the attorneys for the plaintiffs in pressing towards a settlement. Because of the complexity of the competing interests of plaintiffs at various levels of distribution, no settlement would have been possible without the coordination by all the plaintiffs of their efforts. It was the skill and imagination of petitioners Kohn and Berger which accomplished such coordination and which led eventually to the favorable result achieved.

Petitioners Kohn and Berger point out that if this Court allows a lesser amount to be charged against the non-litigating claimants than that which will be paid by the litigating claimants under private fee agreements with their attorneys, then those who exerted the lesser effort will receive the greater net benefit. The point is a valid one which merits discussion. Absolute equalization between litigating and non-litigating claimants can be achieved in one of two ways. On the one hand, the Court could arbitrarily award Messrs. Kohn and Berger 33⅓% from distributions to the non-litigating claimants, thus making the rate as to them the same as what they charged their own clients.[14] But such a solution would give Messrs. Kohn and Berger more than this Court has concluded they are reasonably entitled to for the services they have rendered. Accordingly, such a means of equalizing fees is clearly unacceptable.

On the other hand, this Court might undertake to establish the rate for all contingent fee agreements between plaintiffs in this litigation and their attorneys. The contingent rate to be charged might then be set at the same rate which the Class Representatives would receive from the portion of the fund to be distributed to the non-litigating claimants. However, it is doubtful whether this Court would have the power to consider the reasonableness of private agreements entered into between a client and an attorney. Even if it did, such power could hardly be exercised in this case. No client and no attorney, who are parties to any contingent fee contract involved here, has applied to this Court to review the reasonableness of the fee agreed upon. Local practice and the circumstances under which each agreement was reached would have to be considered by the Court as to each separate fee arrangement.[15]   Further-

14. However, this rate would be more than the 20% or 25% charged by some attorneys and less than the 40% charged by a few others.

15. Local practice in the various states would seem to vary. The percentages that have been brought to the Court's atten- tion in the various petitions filed include 20%, 25%, 33⅓%, and even 40%. This Court expresses no view as to the propriety of any such contingent fee agreement. See American Bar Association Code of Professional Responsibility, EC 2–17, 2–18 and 2–20.

more, the legal question that would be presented to the Court in connection with a determination whether any such agreement should be rescinded is substantially different from the one presently before the Court. For these reasons, this Court has likewise rejected this latter approach as a means of achieving absolute equalization of the attorneys' fees to be paid by all claimants.

There is already considerable disparity between the rates to be paid by litigating plaintiffs who have contingent fee agreements with their attorneys. Indeed, at a 20% rate, the fees to be paid by the non-litigating claimants will in some instances be the same as those to be paid by some litigating claimants. As complete equalization among all claimants is not possible in any event, no substantial inequity results from the fact that the plaintiffs who contracted with Messrs. Kohn and Berger will be paying fees computed at a higher rate than those claimants who did not engage these attorneys to represent them herein. Whatever disparity there may be between the fees to be paid herein by the litigating and by the non-litigating claimants, such difference is not support for an *increase* in the 20% fee fixed herein by the Court for petitioners Kohn and Berger.

■ This Court would agree, however, that petitioners Kohn and Berger are entitled to charge all of their private clients a contingent fee of 33⅓% of their recovery. Most of their clients, who are responsible builder-owners, have agreed upon such a figure. Presumably the figure is an acceptable one in the Philadelphia area for clients dealing with Messrs. Kohn and Berger, and this Court will therefore approve a similar charge to petitioners' other private clients. As mentioned hereinabove, the test for determining what is a proper contingent fee to be charged a private client is entirely different from the test for determining what is a reasonable fee for class representation in a class action settlement.

## IV

### *The Claims of the Other Petitioning Attorneys*

■ Petitioners Kohn and Berger, and the attorneys for a number of other plaintiffs, object to any allowances from the settlement fund for any attorney other than counsel for the Class Representatives. Messrs. Kohn and Berger claim that the settlement resulted almost entirely from their efforts and that other attorneys for plaintiffs should receive compensation for their small contribution to the settlement fund only under their private fee agreements with their clients.

This Court has concluded that none of these twelve petitioning attorneys should be awarded a fee by the Court to be charged against distributions to the non-litigating claimants. All but one of them will receive fees from their clients for their services in this litigation. The out-of-pocket expenses of litigation of each has been allowed, insofar as such expenditures were made on behalf of the claims of builder-owners. In the contractors' settlement, this Court did award a fee to an attorney other than counsel for the Class Representatives. 322 F.Supp. 839–840. However, Morton Hamburg, the attorney in question, was head of the ad hoc contractors' committee from October, 1969 until March 1, 1970 and conducted the settlement negotiations until that latter date when Mr. Sullivan assumed the leadership on behalf of the settling plaintiffs. Mr. Hamburg was awarded a $5,000 fee from the contractors' settlement fund for the leadership he provided at this early stage of the negotiations.

Insofar as the builder-owner settlement is concerned, it is not disputed that petitioners Kohn and Berger provided the leadership for the class from beginning to end. Whatever contribution others made to the creation of the fund was minor when compared to that of Messrs. Kohn and Berger. As discussed more fully hereinbelow, each such peti-

tioning attorney has been adequately compensated by fees to be paid him by his clients, or for other reasons is not entitled to an award from the Court.

### 1. *Applications of Messrs. Burke, Downs, Harris and Steinhardt.*

Each of these four attorneys seeks fees from the settlement fund only if this Court concludes that an attorney or attorneys other than counsel for the Class Representatives should be compensated from the fund. Each of these four then is satisfied that they will be adequately compensated for any contribution they made to the creation of the settlement fund by the payment of fees by their clients.[16] For the reasons hereinafter stated, the Court has concluded that no one other than Messrs. Kohn and Berger should be awarded fees from the settlement fund. It is therefore not necessary to consider the applications of Messrs. Burke, Downs, Harris and Steinhardt.

### 2. *Joint Application of John A. Cochrane and Floyd E. Boline.*

Messrs. Cochrane and Boline have filed a joint application seeking fees in the amount of $116,000. They are counsel of record in three cases filed in the District of Minnesota. From this Court's knowledge of these proceedings, it is clear that most of the efforts of these two attorneys have been directed towards prosecution of the contractor cases. They have elected to exclude their contractor clients from the contractor settlement and are proceeding with the litigation against all the defendants.

These applicants have contingent fee agreements with their builder-owner clients which will result in their receiving some $31,000 in fees. Any payment made to them from the settlement fund will result in the reduction of the amount of the fees to be paid by their clients. Therefore, if this Court were to award these attorneys fees in the amount of $31,000 or more, the claimants represented by Messrs. Cochrane and Boline would, unlike all the other claimants herein, receive a distribution undiminished by any fee. In view of all of these circumstances, this Court is satisfied that Messrs. Cochrane and Boline are not entitled to a fee to be charged against the non-litigating claimants. They will receive adequate compensation for whatever small contribution they made to the creation of the builder-owner settlement fund under their private fee agreements.

### 3. *Application of Paul R. Connally.*

Mr. Connally seeks no specified amount but merely asks this Court to award him a reasonable fee from the settlement fund. His argument in support of his application related primarily to his opposition to the assessment by petitioners Kohn and Berger of a 16⅔% fee against distributions to his clients and to his claim that his clients' expenses of litigation should be paid from the settlement fund. For the reasons stated hereinabove, this Court has agreed with both of these contentions.

Mr. Connally filed three different suits in the District of Columbia, the first of which was instituted on October 31, 1967. He represents builder-owner claimants under various different contingent fee agreements which would result in the payment to him of net fees in excess of $240,000. This Court is satisfied that Mr. Connally will be adequately compensated for his services in contributing to the creation of the settlement fund by fees paid directly to him by his clients. For these reasons, no award will be made to him from the settlement fund.

### 4. *Application of C. Carleton Frederici.*

Mr. Frederici has filed an application herein seeking fees in the amount of

---

16. Many other plaintiffs' attorneys, who contributed to the settlement to the same slight extent as did the twelve petitioners in question, where satisfied with their private fee arrangements and have commendably refrained from seeking an award from the settlement fund.

$17,646. He filed two suits in the Southern District of Iowa, one on October 15, 1969 on behalf of builder-owners, and the other on June 5, 1969 on behalf of plumbing and other contractors. He was present at several settlement conferences and participated in the taking of depositions.

Like Mr. Cochrane, Mr. Frederici's clients have opted out of the contractor settlement and are continuing the litigation against the defendants. The record here indicates that his efforts have been devoted mainly towards prosecution of his contractor case, and he would appear to be entitled to receive the major part of his compensation from any recovery effected therein. Mr. Frederici's agreement with his builder-owner clients will result in the payment to him of fees of some $2,940. Like Mr. Cochrane, if this Court were to award him fees in that amount, he has agreed to credit such sum against the fees to be paid by his clients, a result which would relieve his clients from any requirement that they pay any fees from the amounts distributed to them under the settlement. Under all these circumstances, this Court concludes that Mr. Frederici will be adequately compensated for the slight contribution that he made to the creation of the settlement fund by the fees received from his own clients.

5. *Application of Mark I. Harrison.*

This applicant seeks a fee of $6,745. Even his own appraisal of his contribution to the builder-owner settlement indicates that at best it was minimal. Mr. Harrison has devoted substantially all of his time to claims asserted on behalf of public bodies. He estimates that the time he has spent on behalf of builder-owners is no more than 6% of his total time in this litigation.

Mr. Harrison was attorney for the State of Arizona and other public bodies in that State, and he appeared at a hearing in this Court to oppose unsuccessfully motions for summary judgment filed by the defendants in connection with the claims of those plaintiffs.

Philadelphia Housing Authority v. American Radiator and Standard Sanitary Corporation, 323 F.Supp. 381 (E.D. Pa.1970). His motion for reargument was denied on January 27, 1971. Mr. Harrison, who represents 1,029 units, has no agreement with any of his builder-owner clients for the payment of any fees as a result of distributions to them. However, he is entitled to receive fees for recoveries made on behalf of his public body clients. Negotiations are continuing with reference to a settlement of these claims, but to date no final settlement has been presented to the Court. This Court concludes that Mr. Harrison's contribution to the builder-owner settlement was so minimal that he is not entitled to receive a fee from this settlement fund.

6. *Application of Mitchell A. Kramer.*

Mr. Kramer seeks a fee in the amount of $7,537 from the settlement fund. He expects to receive $5,900 from his clients under private contingent fee agreements with them. As in the cases of Messrs. Cochrane and Frederici, his clients rather than he will benefit from any award made by this Court up to the amount of $5,900.

Mr. Kramer is counsel of record in several suits filed in this District, the earliest of which was filed on December 24, 1969. This Court concludes that he will be adequately compensated for any slight contribution he made to the creation of the settlement fund by the fees his clients have agreed to pay him.

7. *Application of Paul D. Scanlon.*

In requesting a fee in the amount of $627,600, this applicant seeks an award more than six times greater than that sought by any petitioning attorney other than counsel for the Class Representatives. Quite clearly, the record here lends no support for such an excessive request.

Most of Mr. Scanlon's clients were homeowners, commercial building owners and apartment building owners who do

not qualify as builder-owners under the terms of this settlement. The efforts undertaken by him in this litigation were directed principally towards the interests of those clients. Defendants' motions to dismiss actions brought by Mr. Scanlon on behalf of these claimants were granted by Judge Lord. *Philadelphia Housing Authority v. American Radiator and Standard Sanitary Corporation*, 50 F.R.D. 13 (E.D.Pa.1970). After arguing and losing before Judge Lord, Mr. Scanlon argued and lost the appeal. *Mangano v. American Radiator and Standard Sanitary Corp.*, 438 F.2d 1187 (3rd Cir. 1971). He suggests that these decisions greatly benefited the builder-owner class. This is undoubtedly so, but Mr. Scanlon is hardly entitled to be paid from this settlement fund for these losing efforts undertaken for other claimants. Had he been successful on behalf of his homeowner and other clients, recoveries by builder-owner claimants would have been seriously jeopardized. His application in the main is no more than an attempt to be compensated for his unsuccessful efforts expended on behalf of claimants not involved in this settlement.

In support of his application, Mr. Scanlon claims that he made a substantial contribution to this settlement because of his part in taking the deposition of William E. Kramer of the Plumbing Fixture Manufacturers Association. The Kramer deposition commenced on January 19, 1970, which was after the date that the draft agreement of the proposed settlement with the full-line defendants was prepared and circulated. Such deposition was not concluded until March of 1970, more than a month after the date of the execution of such settlement agreement. Various plaintiffs' counsel participated in the taking of this deposition, but Mr. Scanlon accounted for some 70% of the examination of the witness Kramer by attorneys for the plaintiffs. At the time of the deposition, his homeowner and other cases were still pending. Even if it were assumed that he was appearing on behalf of his builder-owner clients, the record of the deposition proceedings indicates that much of the time he spent was not only wasted but was in fact counterproductive insofar as the interests of builder-owner plaintiffs were concerned.

Mr. Scanlon represents builder-owner claimants whose claims amount to 10,174 units. This Court has awarded him herein that portion of the expenses he has claimed which are reasonably related to this particular settlement. In addition, defendants have paid him $25,000 to cover his expenses in the *Mangano* case in return for his agreement not to seek certiorari. Mr. Scanlon has contingent fee agreements with his clients which will result in the receipt by him of fees amounting to some $19,000. He will be adequately compensated for whatever minor contribution he may have made on behalf of builder-owner clients to the creation of this settlement fund by such direct fees to be paid him.

8. *Application of Lawrence Walner.*

Mr. Walner has filed an application seeking fees in the amount of $30,500 from this settlement fund. He also represents various contractors in this litigation and was awarded a fee of $3,000 by the Third Circuit from the contractors' settlement fund. 438 F.2d at 35. Mr. Walner responded to this Court's letter of March 14, 1972 requesting further details but did not furnish the Court with the number of units he represented nor the amount of the fees he will be receiving directly from his builder-owner clients. Apparently, it is disputed that he in fact represents several claimants who will receive distributions from this settlement fund. Mr. Walner did not appear at the hearing on April 7, 1972 to support his application.

Mr. Walner has filed four suits in this litigation, only one of which was brought on behalf of builder-owner plaintiffs. He is proceeding with the litigation on behalf of several of his contractor clients. He claims that he contributed to this settlement by unsuccessfully challenging the contractors' settlement. See 438 F.2d 30.

Like Mr. Scanlon, Mr. Walner is not entitled to be compensated from this fund for a losing effort on behalf of contractor clients. He is entitled to receive contingent fees from his builder-owner clients amounting to one-third of the amount of the distributions to them. Although he has failed to furnish the Court with the actual amounts involved, it would appear that he will be adequately compensated for any small contribution he made to this settlement under these private fee agreements. For these reasons, his application is denied.

## V

### *Conclusion*

For the reasons stated, the pending applications for fees and expenses are granted in part and denied in part. This Court's findings of fact and conclusions of law under Rule 52(a) of the Federal Rules of Civil Procedure are embodied in the aforegoing opinion, whether or not expressly so characterized. Counsel for the Class Representatives are directed to submit an appropriate Order prepared in accordance with the findings and conclusions herein made.