Harry O. BENSON, Plaintiff and Respondent,

v.

Frank SCHNEIDER, Defendant and Appellant,

No. 7484.

Supreme Court of North Dakota.

Feb. 23, 1955.

666

Teigen & Erickstad, Devils Lake, Paul Benson, Atty. Gen., North Dakota, and Christopher U. Sylvester, Sp. Asst. Atty. Gen., for defendant and appellant.

Duffy & Haugland, Devils Lake, for plaintiff and respondent.

MORRIS, Judge.

In this proceeding the plaintiff, a non-resident, seeks to recover from the Unsatisfied Judgment Fund the sum of $3,767.50 upon a judgment rendered against Frank Schneider for injuries sustained in an automobile collision on the highways of this state. The Unsatisfied Judgment Fund was created by Chapter 274, SLND 1947 which, as amended, now appears as Chapter 39–17, NDRC 1953 Supp. The fund is created by the annual exaction of $1 from the owner of each motor vehicle registered. The exaction is dispensed with in years when the amount of the fund is maintained within certain limits.

Section 39–1703, NDRC 1953 Supp. prescribes conditions under which recovery may be had from the fund as follows:

"Where any person, who is a resident of this state, recovers in any court in this state a judgment for an amount exceeding $300.00 in an action for damages resulting from bodily injury to, or the death of, any person occasioned by, or arising out of, the ownership, maintenance, operation or use of a motor vehicle by the judgment debtor in this state, upon such judgment becoming final, such judgment creditor may, in accordance with the provisions of this Act (chapter), apply to the judge of the

district court in which such judgment was rendered, upon notice to the attorney general, for an order directing payment of the judgment out of said fund."

The statute then prescribes the detailed showing that must be made to establish the right to participate, which includes the issuance of an execution and a return by the sheriff showing the amount realized thereon to be insufficient to satisfy the judgment.

The plaintiff has complied with the provisions of Section 39–1703 with one important exception. He is not a resident of the State of North Dakota. He is a citizen of the United States and a resident of the State of Illinois. The attorney general appeared in defense of the Unsatisfied Judgment Fund and resisted the plaintiff's application upon the sole ground of nonresidence.

The plaintiff asserts that the statutory provision excluding nonresidents from recourse to the fund is violative of the provision of Article IV, Section 2, of the United States Constitution:

"The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

And also the provision of Article XIV of the amendments to the Constitution forbidding a state to deny to any person within its jurisdiction the equal protection of the laws.

The trial court determined that the statute in question was unconstitutional insofar as it excluded the plaintiff from participation in the Unsatisfied Judgment Fund and issued an order directing the state treasurer to pay plaintiff's judgment. From this order the defendant appeals, the appeal being prosecuted by the attorney general of the State of North Dakota.

█ Section 2 of Article IV does not mean that the rights of nonresidents at all times must equal those of the residents of a state. In Cooley's Constitutional Limita-

tions, Eighth Edition, page 821, we find this general statement:

"Although the precise meaning of 'privileges and immunities' is not very conclusively settled as yet, it appears to be conceded that the Constitution secures in each State to the citizens of all other States the right to remove to, and carry on business therein; the right by the usual modes to acquire and hold property, and to protect and defend the same in the law; the right to the usual remedies for the collection of debts and the enforcement of other personal rights; and the right to be exempt, in property and person, from taxes or burdens which the property, or persons, of citizens of the same State are not subject to. To this extent, at least, discriminations could not be made by State laws against them. But it is unquestionable that many other rights and privileges may be made—as they usually are—to depend upon actual residence: such as the right to vote, to have the benefit of exemption laws, to take fish in the waters of the State, and the like."

Discriminations against nonresidents have also been held valid with respect to statutes regulating the practice of the law, Keeley v. Evans, D.C., 271 F. 520; see also 5 Am.Jur. Attorneys at Law, Section 21; 7 C.J.S., Attorney and Client, § 7c.; hunting, In re Eberle, C.C., 98 F. 295; Cummings v. People, 211 Ill. 392, 71 N.E. 1031; State v. Gallop, 126 N.C. 979, 35 S.E. 180; requiring nonresidents to give security for costs, Haney v. Marshall, 9 Md. 194; and the right to sell intoxicating liquor, Mette v. McGuckin, 18 Neb. 323, 25 N.W. 338; Welsh v. State, 126 Ind. 71, 25 N.E. 883, 9 L.R.A. 664; DeGrazier v. Stephens, 101 Tex. 194, 105 S.W. 992, 16 L.R.A.,N.S., 1033, 16 Ann. Cas. 1059.

In Heim v. McCall, 239 U.S. 175, 36 S.Ct. 78, 60 L.Ed. 206, Ann.Cas. 1917B, 287, it was held that the provisions of a New York Labor Law that only citizens of the United States shall be employed on public works and that preference shall be given to citi-

zens of the State of New York were not unconstitutional as violative of the privileges and immunities clause of the Constitution of the United States or the equal protection or due process clause of the Fourteenth Amendment.

City and County of Denver v. Bossie, 83 Colo. 329, 266 P. 214, 217, involved a statute that required the city to use materials purchased in Colorado. The court said:

"In the course of our consideration of this case, some of us have been in doubt as to the constitutionality of the said sections 453–455, lest they might amount to a restriction of commerce between states, and subvert or abridge the right of citizens of other states, or deny equal protection of the laws, but our doubts are set at rest by Heim v. McCall, 239 U.S. 175, 36 S.Ct. 78, 60 L.Ed. 206, which holds that the state may buy of whom it will, and that the municipalities are mere instruments of the state, and so must buy as the state directs."

In State v. Senatobia Blank Book & Stationery Co., 115 Miss. 254, 76 So. 258, the court considered a statute prohibiting the letting by boards of supervisors of counties of contracts to furnish the county with blank books, stationery, etc. to any bidder who was not a resident of the state or who did not have a printing plant in the state or who was not a bona fide resident of the state actually engaged in the printing business. It was there held that the act in question in no way violated any provision of the federal constitution. See also Tribune Printing & Binding Co. v. Barnes, 7 N.D. 591, 75 N.W. 904.

The plaintiff in support of his contention that the exclusion of nonresidents from participating in the Unsatisfied Judgment Fund infringes on the rights of citizens of other states to the full enjoyment of the privileges and immunities guaranteed by the constitution cites and quotes from Blake v. McClung, 172 U.S. 239, 19 S.Ct. 165, 172, 43 L.Ed. 432. We do not believe that case supports the plaintiff's position here. It

held that when establishing regulations for the conduct of private business of a particular kind, a state may not give to its own citizens essential privileges connected with that business which it denies to citizens of other states and that as a consequence a state cannot constitutionally discriminate in favor of resident creditors of an insolvent as against nonresident creditors. The court makes this pertinent comment:

"The constitution forbids only such legislation affecting citizens of the respective states as will substantially or practically put a citizen of one state in a condition of alienage when he is within or when he removes to another state, or when asserting in another state the rights that commonly appertain to those who are part of the political community known as the people of the United States, by and for whom the government of the Union was ordained and established."

The plaintiff, both on oral argument and in the brief, stressed the case of Toomer v. Witsell, 334 U.S. 385, 68 S.Ct. 1156, 1164, 92 L.Ed. 1460, in which the court held that a statute requiring nonresidents of South Carolina to pay a license fee of $2,500 for each shrimp boat and residents to pay a fee of only $25 for the privilege of catching shrimp in the marginal waters of South Carolina violated the privileges and immunities clause of Article IV, Section 2, of the federal constitution. In distinguishing McCready v. State of Virginia, 4 Otto 391, 94 U.S. 391, 24 L.Ed. 248, the majority opinion states:

"It will be noted that there are at least two factual distinctions between the present case and the McCready case. First, the McCready case related to fish which would remain in Virginia until removed by man. The present case, on the other hand, deals with free-swimming fish which migrate through the waters of several States and are off the coast of South Carolina only temporarily. Secondly, the McCready case involved regulation of fishing in

inland waters, whereas the statute now questioned is directed at regulation of shrimping in the marginal sea."

and reached this conclusion:

"Thus we hold that commercial shrimping in the marginal sea, like other *common callings,* is within the purview of the privileges and immunities clause." (Italics supplied.)

Here again the court was dealing with the regulation of a business through the licensing of those engaged in it. It applied the general rule that was applied in Blake v. McClung, supra, that in regulating a private business a state cannot give its own citizens essential privileges which it denies to others, a rule which has no application to our statute under consideration. Ours is not a regulatory measure. Cases dealing with the regulation and licensing of private businesses bear but remotely, if at all, upon the problem here presented. The facts in those cases and the reasons for the legislation differ widely from those pertaining to our statute.

We now turn to a consideration of a case quoted in the trial court's memorandum opinion and in the plaintiff's brief, Quong Ham Wah Co. v. Industrial Accident Commission, 184 Cal. 26, 192 P. 1021, 12 A.L.R. 1190, wherein it was held that a Workmen's Compensation Act which extended its protection to residents of California injured in other states while working under contracts entered into in California without extending the same protection to nonresidents working under similiar contracts violated the privileges and immunities clause of the federal constitution. The court further held that the result of the constitutional violation was not to render the entire act void but to automatically extend the application of the law to nonresidents. We have been unable to find where this case has been followed or favorably cited on these points in any other jurisdiction. On the other hand, it has been severely criticized in Tedars v. Savannah River Veneer Co., 202 S.C. 363, 25 S.E.2d 235, 239, 147 A.L.R. 914. The South Carolina Supreme Court makes this comment:

"The reasoning of the California Court is far from convincing and it was shortly afterward made the subject of an annotation in 12 A.L.R. 1207, in which the editor said: 'It may be suggested that since the employer would have been liable either way the case was decided, it had not such an interest as would enable it to attack the constitutionality of the act. A question also arises as to the soundness of the decision in broadening the act and extending the benefits of the Compensation Act in case of injuries to a nonresident in another state who was employed under a contract made within the state. Such a construction, in view of the Legislature's intention as evinced by the phraseology of the act, confining its operation to residents, seems to closely border on judicial legislation.' "

In Liggett & Meyers Tobacco Co. v. Goslin, 163 Md. 74, 160 A. 804, 807, a workmen's compensation statute authorizing recovery for injuries received outside of the state was held not discriminatory because it restricted recovery to "citizens and residents" of the state. The court said:

"A different result was reached in the case of Quong Ham Wah Co. v. Industrial Accident Commission, 184 Cal. 26, 192 P. 1021, 12 A.L.R. 1190, by construing the word 'resident' as meaning 'citizen,' and holding that a provision which restricted the jurisdiction of the commission to controversies arising out of injuries suffered beyond the state in cases where the injured employee was a resident of the state and the contract of employment was made within the state, was an unlawful discrimination against the citizens of other states. No authority in point was cited in support of that opinion, which is criticized in 12 A.L.R. 1207, note, and we are unable to accept the reasoning upon which the conclusion of the court was based."

In view of these criticisms of the California decision we are not warranted in accepting its implications as persuasive authority—it is not direct authority under the facts—on the validity of our statute which differs from workmen's compensation acts in both form and purpose.

The statute under consideration creates a special fund composed of exactions from motor vehicle registrants. From this fund are paid certain judgments for damages resulting from personal injury or death not otherwise collectable. Its benefits are confined to residents of the state. The plaintiff is neither a resident nor a motor vehicle registrant. He seeks access to the fund because he claims that the constitution gives him that right through the "Privileges and Immunities" clause. The right or privilege which he seeks is not a natural right, neither is it a right affecting his person or his business. The statute does not regulate his access to or use of the highways. It in no manner interferes with his freedom of conduct. He seeks to benefit from a fund to which he contributes neither directly nor indirectly. Should he suffer damage to either his person or property, he may have redress against the wrongdoer through the same courts, by the same processes and the same aids to enforcement of his rights as any citizen or resident of the State of North Dakota. The only privilege denied him is to have his uncollectable judgment paid out of the special fund created and administered for the benefit of residents of the state.

■ Whether the validity of the statute could be successfully challenged by a nonresident who had contributed to the fund by registration of a motor vehicle we need not determine. This plaintiff does not fall within that class. We note that the State of New Jersey which has a similar law has avoided the latter question by providing that recovery from the fund may be had by the owner of a motor vehicle registered in that state. N.J.R.S.Cum.Supp.1952, Section 39:6–62, N.J.S.A.

"A party attacking the constitutionality of a statute must show that it affects his rights in an unconstitutional manner. That it so affects the rights of others is no concern of his. He may champion his own, but not the rights of others." Mesaba Loan Co. v. Sher, 203 Minn. 589, 282 N.W. 823, 827.

Also, Tooz v. State, 76 N.D. 599, 38 N.W.2d 285; Asbury Hospital v. Cass County, 72 N.D. 359, 7 N.W.2d 438.

■ The plaintiff has cited as applicable to this case the clause of Section 20, Article I of the North Dakota Constitution, providing that no citizen or class of citizens shall be granted privileges or immunities which upon the same terms shall not be granted to all citizens. That provision has reference to citizens of the State of North Dakota. It may not be invoked by the plaintiff who is not a citizen of this state.

■ Chapter 39–17, NDRC 1953 Supp. which confines to residents of North Dakota the right to participate in the fund is not by reason of such limitation unconstitutional and violative of plaintiff's right to participate in the fund by reason of the provision of the federal constitution that citizens of each state shall be entitled to all privileges and immunities of citizens in several states or the constitutional requirements of the equal protection of the laws. The order appealed from is reversed.

BURKE, C. J., and SATHRE, JOHNSON and GRIMSON, JJ., concur.