Elmer L. HORST, on behalf of himself and all others similarly situated, Plaintiff and Appellee,

v.

Hon. William L. GUY, as Governor of the State of North Dakota, and as Commander-in-Chief of the Military and Naval Forces of the State of North Dakota, and Major General LaClair A. Melhouse, as the Adjutant General in and for the State of North Dakota, Defendants and Appellants.

Civ. No. 8911.

Supreme Court of North Dakota.

Oct. 23, 1973.

725

Allen I. Olson, Atty. Gen., and Paul M. Sand, First Asst. Atty. Gen., Bismarck, for defendants and appellants.

Maurice R. Hunke, Dickinson, for plaintiff and appellee.

PAULSON, Judge.

Elmer L. Horst [hereinafter Horst], in his own name and in the name of all others similarly situated, brought this action in the District Court of Burleigh County against the Governor and the Adjutant General of the State of North Dakota [hereinafter Appellants], for the purpose

of securing payment of a veterans bonus under the North Dakota Vietnam Conflict Veterans' Adjusted Compensation Act.

Horst complained that the provisions contained in the last sentence of § 37–25–02(8)(d), N.D.C.C., denied him equal protection of the law, in violation of §§ 11 and 20 of the North Dakota Constitution and § 1, Amendment XIV of the United States Constitution.

On August 23, 1972, the district court issued an order allowing the action to proceed as a class action. On January 19, 1973, the district court rendered judgment declaring, among other things, that the challenged part of § 37–25–02(8)(d), N.D.C.C., was unconstitutional as violative of §§ 11 and 20 of the North Dakota Constitution and § 1, Amendment XIV of the United States Constitution. On January 30, 1973, the district court issued an order allowing attorney's fees to be paid to the attorney for Horst out of the adjusted compensation to be paid to North Dakota veterans who have become or will become eligible to receive adjusted compensation by reason of the judgment entered in the instant case or out of funds the court said the State Legislature could appropriate for that purpose.

The Appellants have appealed from the judgment and from both orders and they allege five specifications of error. These five specifications of error may be summarized into three issues for review, namely:

1. Whether the action was properly maintainable as a class action under Rule 23, N.D.R.Civ.P.

2. Whether the last sentence of § 37–25–02(8)(d), N.D.C.C., is unconstitutional as a denial of equal protection of the law, in violation of §§ 11 and 20 of the North Dakota Constitution and § 1, Amendment XIV of the United States Constitution.

3. Whether the district court's order allowing attorney's fees was proper.

Rule 23 of the North Dakota Rules of Civil Procedure provides in pertinent part:

"(a) Prerequisites to a class action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(b) Class actions maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

"(1) the prosecution of separate actions by or against individual members of the class would create a risk of

"(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or . . ."

There are forty-eight identifiable members of the class in question herein, and the possibility that other members exist is quite distinct according to the testimony of the Director of the Adjusted Compensation Division of the Adjutant General's office. The class is comprised of all North Dakota veterans of the Vietnam Conflict who served on continuous active duty in the United States Armed Forces for a period of fifteen years or more immediately prior to August 5, 1964.

In the case of Arkansas Education Ass'n v. Board of Education, Portland, Arkansas School District, 446 F.2d 763 (8th Cir. 1971), the Federal Circuit Court interpreted the Federal Civil Rule 23, with which the North Dakota Rule 23 [N.D.R.Civ.P.] is identical. That case was a class action brought by black school teachers claiming

discrimination in salaries and the court stated therein, 446 F.2d at 765:

"The determination of whether or not a class is large enough to maintain an action under Rule 23(a) must be made

"'in light of the particular circumstances of the case and generally, unless abuse is shown, the trial court's decision on this issue is final. 3 Moore, Federal Practice ¶ 23.05, at 3422 (2d ed. 1964). [Citations omitted.]'"

We agree with that rule and believe that no abuse has been shown in the instant case. The size of the identifiable class members and the distinct possibility of that size being augmented, combined with the scattered addresses of the members, leads us to the conclusion that the class is sufficiently large to justify the maintenance of a class action.

With regard to the questions of law or fact common to the members of the class and claims or defenses typical of the members of the class, we believe that the present action is ideally suited for class action treatment. The questions of law are identical for all members of the class, and it is reasonable to assume that the claims each member of the class would assert, if each member sued individually, are similar.

At the hearing on whether to allow the maintenance of this class action, the named plaintiff, Horst, gave testimony as to his ability to adequately represent the unnamed members of the class. From that testimony we find that Horst has adequate time to litigate the action, lives close enough to the site of the action, and will be in North Dakota a sufficient length of time to have the action finally determined. We also find Horst's attorney to be quite capable of representing him and the class. In addition, this action is well suited for treatment as a class action in order to avoid inconsistent results that would place a hardship on members of the class, as well as on the Adjusted Compensation Division of the Adjutant General's office. This is the problem that Rule 23(b)(1)(A), N.D.R. Civ.P., seeks to avoid by allowing the maintenance of a class action under such circumstances.

The Appellants claim that a class action is inappropriate in this case because the district court may not have jurisdiction over all the members of the class due to some members being out of the State of North Dakota. We believe, however, that this prospect is not sufficient to destroy the utility of a class action in this case, nor to destroy the district court's jurisdiction. Our Rule 23 is identical with the Federal Rule 23 and, therefore, we believe that an interpretation of the Federal Rule 23 would be equally applicable to our Rule 23.

In Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 912–913 (9 Cir. 1964), the plaintiffs' class actions were dismissed by the district court for failure to properly plead them as class actions. The Ninth Circuit Court of Appeals reversed, and stated:

". . . if the complaints did not properly allege class actions under Rule 23, Federal Rules of Civil Procedure, the jurisdiction of the district court would not be affected. Rule 23 is a rule of procedure, not a limitation upon jurisdiction. . . ."

It is the opinion of this court that the North Dakota Rule 23 [Rules of Civil Procedure] is also a rule of procedure and, therefore, the fact that some of the members of the class may not be within North Dakota does not remove the jurisdiction of the district court to hear the case as a class action.

In addition, we believe that the United States Supreme Court decision in Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 118, 85 L.Ed. 22 (1940), deals with an important point with regard to class actions, wherein the United States Supreme Court states that:

"The class suit was an invention of equity to enable it to proceed to a decree

in suits where the number of those interested in the subject of the litgation is so great that their joinder as parties in conformity to the usual rules of procedure is impracticable. Courts are not infrequently called upon to proceed with causes in which the number of those interested in the litigation is so great as to make difficult or impossible the joinder of all *because some are not within the jurisdiction or because their whereabouts is unknown* or where if all were made parties to the suit its continued abatement by the death of some would prevent or unduly delay a decree. In such cases where the interests of those not joined are of the same class as the interests of those who are, and where it is considered that the latter fairly represent the former in the prosecution of the litigation of the issues in which all have a common interest, the court will proceed to a decree." [Emphasis added.]

Despite the fact that Federal Rule 23 was not in existence in its present form at the time of the *Hansberry* decision, we believe that such case is instructive on the use of class actions where the whereabouts of all members of the class is not known, or, if known, is not within the forum State.

 We find support for our reasoning in the recent Federal case of Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2d Cir. 1968), which was decided after the 1966 amendment to Rule 23 of the Federal Rules of Civil Procedure, which is the form of the Rule we have here in North Dakota. In *Eisen,* representatives of a class of investors sued two brokerage firms for conspiring to monopolize odd-lot trading in violation of the Sherman Act. Although the decision of the Circuit Court of Appeals was to remand the case for an evidentiary hearing on the quality of notice to and the representation of the class, that court stated, at page 568 of 391 F.2d:

"While the Supreme Court has recognized that class actions represent an exception to the general rule under which only parties are bound by a judgment, the procedure adopted must conform to the requirements of due process and fairly insure the protection of absent parties who are to be bound. Hansberry v. Lee, 311 U.S. 32, 42, 61 S.Ct. 115, 85 L.Ed. 22 (1940). Notice, as an integral part of due process must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)."

We are aware that Eisen v. Carlisle & Jacquelin has been dismissed as a class action in 479 F.2d 1005 (2d Cir. 1973). The reason for the dismissal was the finding by the Court of Appeals that the size of the class of investors was unmanageable in a class action. The class involved in *Eisen* comprised 6 million members, located the world over, only 2.25 million of whom were readily identifiable. When the first appeal in the *Eisen* case was remanded to the district court, that court employed two techniques for allowing the class action to proceed. The first technique was a "mini-hearing" on the merits of the case to determine the likelihood of success of the plaintiff class. Since the district court found that there was a likelihood of success of the plaintiff class, the court ordered the defendants in the *Eisen* case to pay 90 percent of the costs of providing notice to the class members. The second technique is termed "fluid recovery", wherein the class as a whole is substituted for individual class members as plaintiffs in the action. If recovery is achieved by the plaintiffs, a large sum of money is paid into court; from this sum the costs and expenses of prosecuting the class action can be paid, as well as the claims of class members who filed for recovery. The Court of Appeals held these techniques unusable because they are not provided for in Rule 23, Federal Rules of Civil Procedure.

In the instant case we have none of the problems presented in *Eisen*. The class is not unmanageably large, the representative plaintiff has paid for the expense of notifying all the readily identifiable class members, and there is no monetary recovery to be paid upon judgment from which the class members may draw. We cite the *Eisen* case only for the proposition that the notice procedure must conform to the requirements of due process in order to protect the interests of absent parties.

Rule 23(c)(2), N.D.R.Civ.P., provides:

*"(c) Determination by order whether class action to be maintained—Notice—Judgment—Actions conducted partially as class actions.*

. . . . . .

"(2) In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel."

In the case at bar, the order of the district court allowing maintenance of the class action complied with Rule 23(c)(2), N.D.R.Civ.P. That order provided for written notice to all the identifiable members of the class, as well as for notice to other possible members of the class, by publication in the State's four largest daily newspapers. All the information required by Rule 23(c)(2), N.D.R.Civ.P., was contained in the notice to the class members.

If the requirements of Rule 23, N.D.R.Civ.P., are complied with, as we believe they were in this case, a class action may still be utilized whether or not all members of the class can be found within the State of North Dakota. We accordingly hold that the order of the district court allowing the maintenance of a class action in this case was proper.

The part of the section of the North Dakota Century Code, namely, § 37–25–02 (8)(d), claimed by Horst to be an unconstitutional denial of equal protection of the law, reads as follows:

"8. . . .

"d. . . . No person shall be considered a resident of North Dakota for the purpose of receiving any benefits under this act if he was on continuous active duty in the armed forces for a period of fifteen years or more, immediately prior to August 5, 1964, and has not established actual abode in North Dakota prior to the effective date of this chapter."

Horst claims that this law classifies North Dakota veterans arbitrarily and discriminatorily, because there is no rational basis for the fifteen-year period of active duty service before August 5, 1964, as a cut-off date for career and non-career veterans.

The Appellants, on the other hand, claim that the purpose of the Act was to compensate non-career veterans for the disruption of their civilian lives caused by entering the military service and that the classification created was a reasonable one for the purpose of distinguishing between career and non-career veterans. This claim is based on the fact that after twenty years of service in the military a serviceman becomes entitled to a pension and therefore his civilian life cannot be said to have been disrupted by entering the military service because of the hostilities in Vietnam.

Horst claims that the previously quoted section of the North Dakota Century Code [§ 37–25–02(8)(d)] violates §§ 11 and 20 of the North Dakota Constitution and § 1,

Amendment XIV of the United States Constitution. Those constitutional sections read as follows:

"United States Constitution

"Amendment XIV

"*Section 1.* All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

"Constitution of North Dakota

"Article I

"Declaration of Rights

"*Section 11.* All laws of a general nature shall have a uniform operation.

"*Section 20.* No special privileges or immunities shall ever be granted which may not be altered, revoked or repealed by the legislative assembly; nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens."

▮▮▮ In our consideration of the constitutionality of the last sentence of § 37-25-02(8)(d), N.D.C.C., we will begin with some basic rules given as holdings in prior cases:

"3. Every presumption is in favor of the propriety and constitutionality of legislation, and improper motives in its enactment are never imputed to the Legislature.

"5. Where a classification is reasonably necessary to effect the purposes of a law which is otherwise within the prov-ince of the Legislature to enact, the classification will not render the law repugnant to the Constitution." ¶¶ 3 and 5 of the syllabus, from State v. Miller, 129 N.W.2d 356 (N.D.1964).

"1. The Fourteenth Amendment to the United States Constitution permits the states a wide scope of discretion in enacting laws which affect some groups of citizens differently than they affect others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective.

"2. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality.

"3. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

"5. Only invidious discrimination is prohibited by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

"6. Neither the Due Process Clause nor the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution demands logical tidiness. No finicky or exact conformity to abstract correlation is required of legislation. The Constitution is satisfied if a legislature responds to the practical living facts with which it deals. Through what precise points in a field of many competing pressures a legislature might most suitably have drawn its lines is not a question for judicial re-examination. It is enough to satisfy the Constitution that in drawing them the principle of reason has not been disregarded, and what degree of uniformity reason demands of a statute is a function of the complexity of the needs which the statute seeks to accommodate." ¶¶ 1, 2, 3, 5, and 6 of the syllabus, from State v. Gamble Skogmo, Inc., 144 ·N.W.2d 749 (N.D.1966).

"5. Sections 11 and 20 of the North Dakota Constitution and § 1 of the fourteenth amendment to the United States Constitution do not prohibit or prevent classification, provided such classification is reasonable for the purpose of legislation, is based on proper and justifiable distinctions considering the purpose of the law, is not clearly arbitrary, and is not a subterfuge to shield one class or to burden another or to oppress unlawfully in its administration." ¶ 5 of the syllabus, from Melland v. Johanneson, 160 N.W.2d 107 (N.D.1968).

In the instant case the purpose of the legislation in question is to compensate North Dakota veterans of the Vietnam Conflict in appreciation for their services rendered to their State and country. The intent is to compensate only residents of North Dakota; this is a valid legislative intent as there is no reason for the citizens of North Dakota to compensate residents of other States.

The problem arises when the State Legislature defines "resident of North Dakota" so as to exclude veterans who have served on continuous active duty for fifteen or more years immediately prior to August 5, 1964, and who have not established actual abode in North Dakota prior to March 29, 1971, the effective date of the Act.

The parties' contentions with respect to the clause in question have been stated previously. We are of the opinion that the contested provision is a valid legislative enactment and constitutionally valid. In furthering its intent that only North Dakota residents who are veterans of the Vietnam Conflict should be compensated, the North Dakota Legislature sought to exclude career veterans who had not established their actual abode in North Dakota. The Legislature sought to accomplish this purpose by excluding veterans who had served for fifteen or more years on continuous active duty immediately prior to August 5, 1964, and who had not

established actual abode in North Dakota prior to March 29, 1971.

The statute in question thus allows career veterans with fifteen or more years of continuous active duty service to qualify for adjusted compensation if they return to North Dakota as their actual abode before March 29, 1971. Even those career veterans with twenty or more years of service, and who thus qualify for a pension, can also qualify for adjusted compensation if they return to this State and establish their actual abode in North Dakota before March 29, 1971.

The North Dakota Legislature wished to compensate only residents of North Dakota who were veterans of the Vietnam Conflict and we cannot say that the method they chose to accomplish that purpose was unreasonable or unconstitutional. State v. Gamble Skogmo, Inc., 144 N.W.2d 749 (N.D.1966). The legislation was within the province of the Legislature to enact, the classifications established were not invidious and, therefore, will not be condemned as being repugnant to either the State or the Federal Constitution. State v. Miller, 129 N.W.2d 356 (N.D.1964); State v. Gamble Skogmo, Inc., *supra*.

As of the date of the trial in the instant case, Horst had served in the Navy for twenty-five years and eighteen days. He was a North Dakota resident when he entered the Navy and returned to North Dakota as a Navy recruiter on July 22, 1969, and he has continued in that capacity. He therefore may have qualified as a resident under § 37–25–02(8)(d), N.D.C.C. However, Horst apparently has another problem to hurdle before he can collect his adjusted compensation. The Adjutant General of North Dakota has established a rule that a veteran must be separated from military service before he can collect his adjusted compensation. The issue of the validity of the Adjutant General's regulation on military separation was before the trial court, but was left undecided because that court found it unnecessary to decide it, in light of its holding on the constitu-

tionality of § 37–25–02(8)(d), N.D.C.C. The trial court also refrained from deciding the issue of whether the fifteen-year limitation applied to subparagraphs (a), (b), and (c) of § 37–25–02(8), N.D.C.C. These issues were not briefed or argued before us and we believe that the parties should have the opportunity of briefing and arguing those issues before such issues are decided. We therefore remand this case to the district court for a determination of these issues, if the parties desire such determination. *Cf.* Snyder's Drug Stores v. North Dakota State Board of Pharmacy, 202 N.W.2d 140 (N.D.1972); Richland County v. State, 180 N.W.2d 649 (N.D.1970).

. In 59 Am.Jur.2d, Parties § 91, at page 478, we find this language:

> *"Contribution to expenses.* It often has been determined by the courts that unnamed parties who benefit from a class action must contribute to the expenses of the proceedings, including the fee for the attorney for the named parties. In a class action to recover a money judgment, all of the costs and expenses of litigation which are not assessed against the losing defendant should be borne by the members of the plaintiff class in proportion to the amount that each would receive by reason of the judgment."

Annotated under § 91 of 59 Am.Jur.2d, Parties, Note 6, at page 478, is the case of Gamboni v. County of Otoe, 159 Neb. 417, 67 N.W.2d 489 (1954), wherein landowners brought an action in their own names and on behalf of all those similarly situated to enjoin assessments on their property because such assessments were unlawfully increased. The landowners were successful in their venture and the Nebraska Supreme Court held, with respect to attorney's fees owed by the unnamed members of the class, in paragraphs 15 and 16 of the syllabus of *Gamboni, supra,* 67 N.W.2d at 493:

> "15. Where one has gone into a court of equity, and, taking the risk of litiga-

tion on himself, has created or preserved or protected a fund in which others are entitled to share, such others will be required to contribute their share to the reasonable costs and expenses of the litigation, including reasonable fees to the litigant's counsel.

> "16. This rule is based on the theory that all in a class benefited should contribute to the expense, their share thus being necessarily entirely dependent upon the success of the litigation."

See 38 A.L.R.3d 1384.

 In addition, in Lindy Bros. Builders, Inc. of Philadelphia v. American Radiator & Standard Sanitary Corporation, 341 F.Supp. 1077, 1082 (D.C.E.D.Pa.1972), it was stated that:

> "Where the efforts of a claimant and his attorneys have produced a fund to be divided among all members of a particular class, it has been recognized first, that the claimant as the representative of the class is authorized to contract for all and to incur proper expenses of litigation, and secondly, that the property produced by the efforts of such plaintiff and his attorney should bear the burden of the expense of the attorney's services so that each member of the class who benefits will contribute his due proportion."

 From the cited authority on attorney's fees in class actions, we believe the district court's order in the instant case allowing attorney's fees to be paid at the rate of 25 percent of the adjusted compensation payable to North Dakota veterans who become entitled to the payment by reason of the judgment rendered by that court was proper. We also agree with that part of the order which allowed for a 33⅓ percent deduction from the payable compensation in the event of an appeal to this court.

The Appellants also object to that portion of the court's order allowing attorney's fees that authorized the North Dako-

ta State Legislature to appropriate funds to pay the attorney for the class in the case at bar. In the first place, we believe that the Legislature could have amended the Vietnam Conflict Veterans' Adjusted Compensation Act to provide for the payment of attorneys' fees to those who challenged the Act. However, the order challenged was issued while the 1973 Legislative Session was in progress and since the Legislature did nothing about it, we believe that the question is moot.

The orders are affirmed in part, the judgment is reversed, and the case is remanded to the district court for further proceedings not inconsistent with this opinion.

ERICKSTAD, C. J., and TEIGEN, VOGEL and KNUDSON, JJ., concur.

VOGEL, J., not being a member of the Court at the time of submission of this case participated on the briefs filed.