Dorothy C. LAW, Plaintiff and Appellant,

v.

F. W. MAERCKLEIN, Special Administrator of the Estate of Dennis R. Fann, Deceased, Defendant,

and

The Unsatisfied Judgment Fund for the State of North Dakota, Appellee.

Civ. No. 9697.

Supreme Court of North Dakota.

April 30, 1980.

Nevin Van de Streek, of Eaton & Van de Streek, Minot, for plaintiff and appellant.

Thomas W. Robb, Spec. Asst. Atty. Gen., Bismarck, for Unsatisfied Judgment Fund.

VANDE WALLE, Justice.

Dorothy C. Law appeals from an order of dismissal and judgment entered pursuant thereto by the Ward County district court on September 4, 1979. We affirm.

The facts of this case are not in dispute. Mrs. Law's son, Danny Hymas, was killed in a car accident while riding in a car driven by Dennis R. Fann, who was also killed in the accident. Mr. Hymas was a resident of North Dakota at the time of his death, was single, and left no issue. The parties have stipulated that Mrs. Law is not a resident of North Dakota.

Mrs. Law brought a wrongful-death action against the estate of Mr. Fann and, pursuant to stipulation, took judgment for $10,203.40, against which she received $4,000 from the insurance carrier covering the car. Mrs. Law applied to have the remaining balance paid out of the Unsatisfied Judgment Fund ("Fund"), but the Attorney General, on behalf of the Fund, objected to such payment because Mrs. Law was not a resident of this State.

These facts were presented to the district court on stipulation and the court agreed with the Attorney General that Mrs. Law could not recover from the Fund because she was not a resident nor had she made any contribution to the Fund. Mrs. Law made timely appeal to this court.

The first issue for consideration is whether or not the district court properly interpreted Section 39–17–03, N.D.C.C., by reading it to require that an applicant must be a North Dakota resident. Section 39–17–03, N.D.C.C., provides, in part:

"Where any person, who is a resident of this state, recovers in any court in this state a judgment for an amount exceeding three hundred dollars in an action for damages resulting from bodily injury to, or the death of, any person occasioned by, or arising out of, the ownership, maintenance, operation, or use of a motor vehi-

cle by the judgment debtor in this state, upon such judgment becoming final, such judgment creditor may, in accordance with the provisions of this chapter, apply to the judge of the district court in which such judgment was rendered, upon notice to the attorney general, for an order directing payment of the judgment out of said fund."

The district court applied this court's decision in Benson v. Schneider, 68 N.W.2d 665 (N.D.1955), to hold that Mrs. Law was precluded from recovering from the Fund because she was not a North Dakota resident. In that proceeding a nonresident sought recovery from the Fund upon an unsatisfied judgment rendered against an individual for injuries to the nonresident sustained in a car accident while driving in the State. This court held that the nonresident was not entitled to collect from the Fund because Section 39–1703, N.D.R.C., 1953 Supp. (predecessor to Section 39–17–03, N.D.C.C.), confined participation in the Fund to North Dakota residents and that such a limitation could be constitutionally imposed.

Mrs. Law contends that the Benson case is distinguishable from the one at bar because in that case the nonresident was both the applicant and the person who had been injured in the automobile accident which gave rise to his cause of action. Here, the person who was killed in the accident, from whose death Mrs. Law derives her cause of action, was a North Dakota resident. Mrs. Law asserts that her wrongful-death action was in essence an action brought by or on behalf of her deceased son's estate so that his residency could be used to meet the residency requirements of Section 39–17–03, N.D.C.C.[1]

We do not agree that the wrongful-death action brought by Mrs. Law was in essence for the benefit of the estate. Wrongful-death actions are brought for the protection of those persons within a fixed

1. It is conceded by counsel for the Fund that had the estate brought the action, instead of Mrs. Law, it would not have been contested. Because this is not the situation before the court, we need not consider whether the estate

would be a "resident" for purposes of Section 39–17–03. See Rosenfield v. Angerstein, 71 N.J.Super. 409, 177 A.2d 38 (1962), discussed infra.

degree of relationship to and dependency on the deceased who suffer actual damage because of the wrongful killing of the deceased. *Satterberg v. Minneapolis, St. P. & S. S. M. Ry. Co.*, 19 N.D. 38, 121 N.W. 70 (1909). Wrongful-death actions, unlike survivor actions which are brought to recover damages the deceased himself could have recovered had he lived, are brought to compensate the survivors for *their* losses. *Sheets v. Graco, Inc.*, 292 N.W.2d 63 (N.D.1980); *Armstrong v. Miller*, 200 N.W.2d 282 (N.D.1972). But a wrongful-death action is an entirely new cause of action—not merely a continuation of the decedent's claim. When Mrs. Law brought the wrongful-death action she was asserting her own rights, not those of her son. Under these circumstances his residency cannot be a factor in Mrs. Law's attempt to meet the requirements of Section 39–17–03, N.D.C.C.

Several hypothetical situations were presented by Mrs. Law to show the "anomalous" results that could occur if the district court's interpretation is followed. These hypothetical situations are not now before the court and we need not decide the issues they raise. But to obviate the results alleged in the hypothetical situations, Mrs. Law suggests that Section 39–17–03 be read to require only that the person who is injured or killed in the accident be a North Dakota resident at the time of the injury or death.

This suggested interpretation is similar to that adopted in *Rosenfield v. Angerstein*, 71 N.J.Super. 409, 177 A.2d 38 (1962). In that case the estate of a Pennsylvania woman killed in a New Jersey car accident made a claim for payment from the New Jersey Unsatisfied Claim and Judgment Fund. The claim was denied and the estate appealed, asserting that the right to recover from the fund was dependent upon the status of the decedent's minor son, who was a New Jersey resident and for whose benefit, in part, the judgment was recovered. The

New Jersey Superior Court held, based on wording used in *Betz v. Director, Div. of Motor Vehicles*, 27 N.J. 324, 142 A.2d 632 (1958), that it is the residency of the decedent which is the determinative factor in allowing recourse from the Fund.

■ We do not find the decision of the New Jersey court persuasive. Although such an interpretation would make the statute more favorable to Mrs. Law's claim, we do not believe this is what the Legislature intended. The unequivocal wording of Section 39–17–03 is:

"Where any person, who is a resident of this state, recovers in any court in this state a judgment . . . ."

Where the wording of a statute is clear and free of all ambiguity, the letter of the statute should not be disregarded under the pretext of pursuing its spirit. *Richard v. Johnson*, 234 N.W.2d 22 (N.D.1975); Sec. 1–02–05, N.D.C.C.[2]

■ It is true that in *Tang v. Ping*, 209 N.W.2d 624, 626 (N.D.1973), this court stated:

". . . Chapter 39–17, N.D.C.C., the Unsatisfied Judgment Fund law, is to be construed liberally in order to carry out its object of compensating persons injured by unknown or financially irresponsible motorists."

But we cannot ignore, in our desire to liberally construe this legislation, the plain wording used in the statute. That plain wording indicates that Fund applicants must be North Dakota residents. We therefore affirm the district court's holding limiting recovery to those persons.

■ We next consider Mrs. Law's challenge to the constitutionality of this requirement. In considering a constitutional challenge to a statute, it is presumed that an enactment of the Legislature is constitutional and that such presumption is conclusive unless the Act is clearly shown to be in contravention of the State or Federal Con-

2. Our holding that the clear meaning of the statute should govern so that "resident" means "resident" is consistent with our reasoning in *Lohnes v. Cloud*, 254 N.W.2d 430 (N.D.1977), wherein this court in effect held that, as used in Section 39–17–03, "State court" means "State court."

stitution. Where the Act is regularly enacted by the Legislature, the only test of its validity is whether or not it violates either the State or Federal Constitution. *Gableman v. Hjelle*, 224 N.W.2d 379 (N.D.1974); *Souris River Telephone Mutual Aid Corp. v. State*, 162 N.W.2d 685 (N.D.1968).

In *Benson v. Schneider, supra,* this court upheld the constitutionality of the residency requirement, stating:

"Chapter 39–17, NDRC 1953 Supp. which confines to residents of North Dakota the right to participate in the fund is not by reason of such limitation unconstitutional and violative of plaintiff's right to participate in the fund by reason of the provision of the federal constitution that citizens of each state shall be entitled to all privileges and immunities of citizens in several states or the constitutional requirements of the equal protection of the laws." 68 N.W.2d at 670.

We reaffirm that holding and apply it here.

Article IV, Section 2, of the United States Constitution provides, in part:

"The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

This provision does not require that the rights of nonresidents at all times equal those of the residents of a State. *Benson v. Schneider, supra.* As noted by the United States Supreme Court in *Baldwin v. Montana Fish and Game Commission*, 436 U.S. 371, 98 S.Ct. 1852, 56 L.Ed.2d 354 (1978):

"When the Privileges and Immunities Clause has been applied to specific cases, it has been interpreted to prevent a State from imposing unreasonable burdens on citizens of other States in their pursuit of common callings within the State, *Ward v. Maryland*, 12 Wall. 418 [79 U.S. 418, 20 L.Ed. 449] (1870); in the ownership and disposition of privately held property within the State, *Blake v. McClung*, 172 U.S. 239 [19 S.Ct. 165, 43 L.Ed. 432] (1898); and in access to the courts of the State, *Canadian Northern R. Co. v. Eggen*, 252 U.S. 553 [40 S.Ct. 402, 64 L.Ed. 713] (1920).

"It has not been suggested, however, that state citizenship or residency may never be used by a State to distinguish among persons. Suffrage, for example, always has been understood to be tied to an individual's identification with a particular State. See, *e. g., Dunn v. Blumstein*, 405 U.S. 330 [92 S.Ct. 995, 31 L.Ed. 274] (1972). No one would suggest that the Privileges and Immunities Clause requires a State to open its polls to a person who declines to assert that the State is the only one where he claims a right to vote. The same is true as to qualification for an elective office of the State. *Kanapaux v. Ellisor*, 419 U.S. 891 [95 S.Ct. 169, 42 L.Ed.2d 136] (1974); *Chimento v. Stark*, 353 F.Supp. 1211 (NH), aff'd, 414 U.S. 802 [94 S.Ct. 125, 38 L.Ed.2d 39] (1973). Nor must a State always apply all its laws or all its services equally to anyone, resident or nonresident, who may request it so to do. *Canadian Northern R. Co. v. Eggen, supra*; cf. *Sosna v. Iowa*, 419 U.S. 393 [95 S.Ct. 553, 42 L.Ed.2d 532] (1975); *Shapiro v. Thompson*, 394 U.S. 618 [89 S.Ct. 1322, 22 L.Ed.2d 600] (1969). Some distinctions between residents and nonresidents merely reflect the fact that this is a Nation composed of individual States, and are permitted; other distinctions are prohibited because they hinder the formation, the purpose, or the development of a single union of those States. Only with respect to those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally." 436 U.S. at 383, 98 S.Ct. at 1859–1860, 56 L.Ed.2d at 364–365.

By making residency a requirement under Section 39–17–03, N.D.C.C., the State has not imposed upon Mrs. Law's pursuit of a common calling; nor has it interfered with her ownership or enjoyment of property; nor has it denied her access to the courts of this State. As was stated in *Benson v. Schneider, supra* :

"The statute under consideration creates a special fund composed of exactions from motor vehicle registrants. From

this fund are paid certain judgments for damages resulting from personal injury or death not otherwise collectible. Its benefits are confined to residents of this state. The plaintiff is neither a resident nor a motor vehicle registrant. He seeks access to the fund because he claims that the constitution gives him that right through the 'Privileges and Immunities' clause. The right or privilege which he seeks is not a natural right, neither is it a right affecting his person or his business. The statute does not regulate his access to or use of the highways. It in no manner interferes with his freedom of conduct. He seeks to benefit from a fund to which he contributes neither directly nor indirectly. Should he suffer damage to either his person or property, he may have redress against the wrongdoer through the same courts, by the same processes and the same aids to enforcement of his rights as any citizen or resident of the State of North Dakota. The only privilege denied him is to have his uncollectible judgment paid out of the special fund created and administered for the benefit of residents of the state." 68 N.W.2d at 670.

■ Before we consider whether or not the residency requirement of Section 39–17–03 denies nonresidents equal protection of the law under the Fourteenth Amendment to the United States Constitution, we determine which standard will be used in our examination. This court has identified these three standards of constitutional review:

(1) the traditional rational-basis standard under which a statute is upheld if the classification is not patently arbitrary or if it bears some reasonable relationship to a legitimate government interest;

(2) the strict judicial-scrutiny standard used when the classification is inherently suspect or concerns a fundamental interest; and

**3.** Classifications which are within the inherently suspect category are discussed in *State ex*

(3) an intermediate standard that has been difficult to label or define but which closely approximates the historical, substantive due-process test. This standard requires a close correspondence between statutory classifications and legislative goals.

*Benson v. N. D. Workmen's Comp. Bureau,* 283 N.W.2d 96 (N.D.1979); *Herman v. Magnuson,* 277 N.W.2d 445 (N.D.1979); *Johnson v. Hasset,* 217 N.W.2d 771 (N.D.1974).

Our concerns here are similar to those found in cases that have applied the traditional rational-basis test, such as *Tharaldson v. Unsatisfied Judgment Fund,* 225 N.W.2d 39 (N.D.1974). That proceeding involved an equal-protection challenge to statutes limiting recovery from the Unsatisfied Judgment Fund to $5,000 in those cases in which the tortfeasor could not be ascertained, while permitting a recovery of $10,000 in other cases. This court rejected the challenge, concluding that the purpose of the Fund was to provide some compensation to victims of automobile accidents who otherwise would be left without a means of recovery and that the allocation among recipients, the amounts available, the number of other State functions in need of money, and other considerations were matters within the competency of the Legislature.

Recovery from the Fund is not a fundamental right. Neither are classifications based on residency inherently suspect.[3] *Horst v. Guy,* 211 N.W.2d 723 (N.D.1973); *accord, Ward v. Bd. of Examiners of Eng., Etc., Com. of P. R.,* 409 F.Supp. 1258 (D.Puerto Rico 1976), aff'd, 429 U.S. 801, 97 S.Ct. 37, 50 L.Ed.2d 64 (1976). Nor do we find the intermediate standard used in *Herman v. Magnuson, supra,* applicable here. We therefore apply the traditional rational-basis test.

■ Under this standard we find the classification is rationally related to the State's objective of limiting recovery to residents alone. This is a legitimate objective. As noted by this court in *Horst v. Guy, supra,* an action to secure payment of a veteran's bonus:

*rel. Olson v. Maxwell,* 259 N.W.2d 621 (N.D. 1977).

"In the instant case the purpose of the legislation in question is to compensate North Dakota veterans of the Vietnam Conflict in appreciation for their services rendered to their State and country. The intent is to compensate only residents of North Dakota; this is a valid legislative intent as there is no reason for the citizens of North Dakota to compensate residents of other States." 211 N.W.2d at 731.

The State has an interest in the general welfare of its residents, which is promoted by compensating them for injuries caused by financially irresponsible drivers, that does not extend to residents of other States. A residency-based classification furthers this legitimate objective by limiting recovery to only those whose welfare concerns the State. Accordingly, we hold that Section 39–17–03 is not violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

The residency requirement of Section 39–17–03 is constitutional.[4] Mrs. Law does not meet this requirement and therefore cannot recover from the Fund.

Because of our holding on the first two issues, we need not consider the other issues raised by the parties. The judgment of the district court is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.

---

**4.** See *Holly v. Maryland Automobile Insurance Fund*, 29 Md.App. 498, 349 A.2d 670 (1975), in which the Maryland Court of Special Appeals upheld the constitutionality of the residency requirement in its Unsatisfied Claim and Judgment Fund Law.