STATE of North Dakota ex rel. Dale MOUG, Executive Director, North Dakota Department of Human Services, Plaintiff and Appellant,

v.

NORTH DAKOTA AUTOMOBILE ASSIGNED CLAIMS PLAN, NoDak Mutual Insurance Company, and State Farm Mutual Auto Insurance Company, Defendants and Appellees.

Civ. No. 10508.

Supreme Court of North Dakota.

Dec. 15, 1983.

Robert P. Brady, Sp. Asst. Atty. Gen., Bismarck, for plaintiff and appellant.

Zuger & Bucklin, Bismarck, for defendants and appellees; argued by Thomas O. Smith, Bismarck.

SAND, Justice.

State ex rel. Moug (State) appealed from a judgment dismissing its action on the basis that the court did not have jurisdiction.

Four enrolled Indians were injured in an automobile accident which occurred on an Indian reservation. They filed claims under the provisions of Ch. 50–24.1, North Dakota Century Code, with the Social Services Board, the predecessor to the Human Services Department (State). Chapter 50–24.1, NDCC, is a program which provides medical assistance for needy persons. The benefits were paid and the State Social Services Board, in turn, assigned its assignments from the four Indians to the North Dakota Assigned Claims Plan (Plan), and requested payment pursuant to NDCC § 26–41–19.

The insurers to whom the claims were assigned, and which were subrogated to the rights of the assignor under the Plan,[1] declined to pay the claims on the advice of the Plan, whereupon the State brought this action. The Plan moved to dismiss the action on the basis that the court did not have jurisdiction because the accident occurred on an Indian reservation and the parties assigning their claims were enrolled Indians. The court granted the motion and the State appealed.

The State contended that jurisdiction of the state court is not significant in this case, but, rather, the pertinent question is, were the conditions and requirements of NDCC Ch. 50–24.1 and Ch. 26–41, particularly §§ 26–41–19 and 26–41–08, met and satisfied.

The basic argument by the Plan was that the assignee's rights were no greater than those of the assignor. We do not dispute this. *First National Bank, Bismarck v. O'Callaghan,* 143 N.W.2d 104 (N.D.1966); *First National Bank of Minot v. McDonald Construction Co.,* 137 N.W.2d 667, 672 (N.D.1965). The Plan then contended that because the original assignor was not subject to the jurisdiction of the state courts, the assignee did not acquire anything.

■ Chapter 26–41, NDCC, does not require that the assignment, to be valid, must guarantee that the assignee will be able to recover under the assignment. In this respect the assignment is comparable to a quitclaim deed. Neither Ch. 50–24.1 nor

---

1. In the earlier case, *State ex rel. Moug v. N.D. Auto Assigned Claims Plan,* 322 N.W.2d 245 (N.D.1982), the claims and assignments were challenged on the basis that the statute of limitations had run and that the North Dakota Automobile Assigned Claims Plan was not an entity capable of being sued. This Court concluded that the statute of limitations, pursuant to NDCC §§ 50–24.1–02.1 and 50–24.1–08, did not apply, and concluded that the Plan was an entity capable of being sued.

Ch. 26–41, NDCC, contains any language that can be construed to mean that in order for an assignment to be acceptable for benefits, a valid showing must be made that the original assignor is subject to the jurisdiction of the state courts. Neither does Ch. 26–41, NDCC, contain language requiring a showing that the individual against whom an action may lie for an alleged wrong is not judgment-proof. Such prerequisites have no legal basis or foundation under Ch. 26–41.

We are not aware of any provision in Ch. 26–41 or, for that matter, in Ch. 50–24.1, NDCC, and none have been called to our attention, stating or implying that enrolled Indians involved in an accident on an Indian reservation may not participate in any of the benefits under the aforementioned chapters. NDCC § 26–41–08 sets forth which persons are not entitled to benefits under Ch. 26–41. It contains no language which conceivably may be construed to exclude enrolled Indians if the injury occurred on an Indian reservation.

■ In this respect, we note that NDCC § 26–41–07 contains language which militates against the contentions of the Plan. In part it provides:

"Each basic no-fault insurer of a secured motor vehicle shall pay basic no-fault benefits without regard to fault for economic loss resulting from:

1. Accidental bodily injury sustained within the *United States of America, its territories or possessions, or Canada* by the owner of the motor vehicle or any relative of the owner: ...

2. [Contains similar language.]"

The significance of this language is to note that the benefits are not limited to injuries sustained in an area where the courts of this State have jurisdiction, but rather includes and encompasses all of the area "within the United States," and even Canada. We are aware that this statement is made with reference to a secured vehicle. But, that is not the point we wish to make. This language is referred to only to illustrate that the question of jurisdiction is not involved and should not be involved. In this respect we cannot ignore NDCC § 26–41–08, which sets out what persons are not entitled to benefits. Nowhere in that section do we find any language that can be construed to mean that any injury occurring on an Indian reservation involving an Indian or caused by an Indian is excluded from under Ch. 26–41. No valid reason has been submitted, or called to our attention, that the persons (Indians) involved here, who gave the initial assignment, come within the provisions of NDCC § 26–41–08 stating what persons are not entitled to benefits.

By comparison, Article II, § 1, of the North Dakota Constitution, makes no mention, directly or implicitly, if or under what conditions an Indian may exercise the electorial franchise at any state or local election in this state. Nevertheless, Indians meeting the general requirements of age, citizenship, and residence, are electors. *State ex rel. Tompton v. Denoyer*, 6 N.D. 586, 72 N.W. 1014 (1897); *Swift v. Leach*, 45 N.D. 437, 178 N.W. 437 (1920). See also, *Means v. Wilson*, 522 F.2d 833 (8th Cir.1975) *cert. denied*, 424 U.S. 958, 96 S.Ct. 1436, 47 L.Ed.2d 364 (1976).

The foregoing conclusion was reached in the face of the Enabling Act, Art. XVI, § 203, N.D. Const. (1889) (renumbered as Art. XIII, § 1), stating that "Indian lands shall remain under the absolute jurisdiction and control of the Congress of the United States." We also note that Congress has provided the method by which the state may acquire jurisdiction over Indians. This State, in accordance therewith, enacted NDCC Ch. 27–19. In *Tompton* the court noted that the exclusion of enrolled Indians, as electors, might have been accomplished if the proper procedure had been used in amending the statute or constitution. In effect, the court said the attempted exclusion did not become law. We make reference to this constitutional provision on electors only to illustrate that if the Legislature intended to exclude Indians it should have employed such language in Ch. 26–41. (However, we express no views whether or

not an exclusion like that could survive a constitutional challenge.)

We also note that chapters 26–41 and 50–24.1, NDCC, do not contain language similar to that found in the state unsatisfied judgment fund which permits a party to participate in the fund provided a judgment of a North Dakota district court is assigned to the fund. In *Lohnes v. Cloud,* 254 N.W.2d 430 (N.D.1977), we concluded, based on the language of the unsatisfied judgment fund, that for the assignment of a judgment to be valid it had to be from a state district court to qualify under the Act. In the instant situation, we do not have such limiting language nor do we have any language that approaches a similar requirement. In fact, no requirement of any kind is placed upon the assignment. Consequently, the only requirement is that it be a legally valid assignment.

The instant situation is not comparable to the issue in *Law v. Maercklein,* 292 N.W.2d 86 (N.D.1980), wherein the court held that legislation limiting the unsatisfied judgment fund benefits to North Dakota residents was valid.

If any conditions such as those contended by the Plan are desirable, then it should be accomplished by legislation and not by judicial decree. *Hoffman Motors, Inc. v. Enockson,* 240 N.W.2d 353, 355 (N.D.1976). The Legislature may thus consider who ultimately should bear the cost of uncollectible claims—the taxpayer, the consumer, the insurance industry, or a combination of them. Finally, no statutory provision requires that the legal ability to pursue a recovery on the claim is a prerequisite for a needy person to be eligible for benefits.

We, however, agree with the trial court that this issue should have been raised and presented with the other issues raised in the earlier case of *State ex rel. Moug v. North Dakota Automobile Assigned Claims Plan,* 322 N.W.2d 245 (N.D.1982).

In accordance with the legal concepts expressed in this opinion, the judgment of the district court is reversed and the case is remanded for the purpose of entering an appropriate judgment in favor of the Human Services Department.

ERICKSTAD, C.J., and VANDE WALLE and GIERKE, JJ., concur.

PEDERSON, Justice, dissenting.

No matter how you slice it, this is a suit to recover money damages for injuries to enrolled Indians, caused by the conduct (no-fault) of other enrolled Indians during the operation (uninsured) of motor vehicles on an Indian reservation. Like in the shell game, I know that the pea is there somewhere, even though the sleight-of-hand tactics make it difficult to follow.

We held in *Three Affiliated Tribes, Etc. v. Wold Engineering, P.C.,* 321 N.W.2d 510 (N.D.1982), that without tribal acceptance of state jurisdiction under Chapter 27–19, NDCC, the courts of this state do not have jurisdiction to entertain a civil action arising within an Indian reservation which is brought by an Indian tribe against non-Indian defendants. Even though no Indian tribe has accepted state jurisdiction, it appears to me that any enrolled Indian, relying on the majority opinion in this case, can elect to confer subject-matter jurisdiction on the courts of this state by merely making an assignment to one who is not an enrolled Indian. This makes a sham of the requirement of tribal acceptance.

If, on the other hand, it is intended that assignments must be first authorized by state law, I see no reason why the next session of the Legislature, by adept use of its bootstraps, doing indirectly what it cannot do directly, should not solve for all cases the knotty question of Indian jurisdiction.

I think that the trial court correctly granted the motion to dismiss. The judgment should be affirmed.